796 A.2d 697

**James Melvin GRAY**

v.

**STATE of Maryland.**

**No. 37, Sept. Term, 2001.**

Court of Appeals of Maryland.

April 11, 2002.

Michael R. Braudes, Asst. Public Defender (Stephen E. Harris, Public Defender, and Anne E. Gowen, Asst. Public Defender, on brief), Baltimore, for Petitioner.

Steven E. Holcomb, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Md., on brief), Baltimore, for Respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

CATHELL, Judge.

James Melvin Gray, petitioner, after a trial in the Circuit Court for Charles County, was convicted of first-degree murder in the death of his wife, Bonnie Gray. On June 17, 1998, petitioner was sentenced to be incarcerated for life. Petitioner filed an appeal to the Court of Special Appeals. The Court of Special Appeals affirmed the decision of the Circuit Court for Charles County in *Gray v. State,* 137 Md.App. 460, 769 A.2d 192 (2001).

Petitioner filed a Petition for Writ of Certiorari to this Court, which we granted. *Gray v. State,* 364 Md. 461, 773 A.2d 513 (2001). In his petition, petitioner presents four questions for our review:

"1. Where a defendant asserts that another individual committed the offense for which he is on trial, that assertion possesses evidentiary support, and the alternative suspect invokes his Fifth Amendment privilege concerning the mat-

ter, is the defendant entitled to question the alternative suspect in the presence of the jury?

2. Where in the context of Question I the trial court refuses to permit the defense to question the alternative suspect in the jury's presence, is the trial court obligated to propound an instruction to the jury explaining why the defense has apparently chosen not to question that person?

3. Did the trial court err in excluding from evidence the proffered statements of the alternative suspect indicating that he had committed the offense, and did the courts below err in holding that the trial court in ruling upon this issue may determine that such statements were never made, rather than leaving that determination for the jury?

4. Did the trial court err in admitting the extrajudicial statements of the murder victim indicating her intention to inform Petitioner that she was planning to end their marriage?"

We shall respond to question three first, and hold that the trial court erred in refusing to permit, under the declaration against penal interest exception to the hearsay rule, the admission in evidence of the statement of the alternative suspect that indicated the alternative suspect had committed the offense for which the petitioner was on trial. For guidance purposes, we will later address questions one and two.

## I. Relevant Facts

On November 30, 1995, Bonnie Gray was reported missing by petitioner. Her partially nude body was discovered in the trunk of her car on December 6, 1995. Mrs. Gray had suffered ten lacerations to the head, three gunshot wounds to the head, and a stab wound to the left chest. Mrs. Gray also had five of her fingers severed.

A jury trial was held in the Circuit Court for Charles County from March 17, 1998 to May 4, 1998. During the trial, petitioner's defense was that his wife was murdered by Brian Gatton (Gatton). There was witness testimony about a relationship between Gatton and Mrs. Gray. Testimony was also

presented about Gatton's drug use, his "obsession" with knives, and his being in possession of jewelry after Mrs. Gray's murder that it was asserted was similar to that owned and worn by Bonnie Gray but was not found when her body was discovered.

At trial, petitioner subpoenaed Gatton to testify. The Circuit Court was made aware that Gatton intended to invoke his Fifth Amendment right against self-incrimination. Gatton was therefore first called to testify by the petitioner out of the jury's presence,[1] and he was questioned about his role in the murder, to which Gatton invoked his Fifth Amendment right. The Circuit Court determined that Gatton could invoke his Fifth Amendment privilege. The trial court, however, refused to permit the petitioner to question Gatton, and thus to have Gatton invoke his rights under the Fifth Amendment, in the jury's presence. The trial court also declined to instruct the jury that Gatton had exercised his right to remain silent. Gatton was called to the stand in the jury's presence and asked only his name and birth date. Gatton was then instructed to stand next to petitioner and the witness was then excused. No questions about Gatton's exercise of the privilege were permitted. Petitioner then requested that the Circuit Court give a jury instruction that the witness had invoked his Fifth Amendment privilege. The Circuit Court declined to give that instruction to the jury.

During pretrial proceedings, the State filed a Motion in Limine to exclude statements made by Gatton to Evelyn Johnson (Evelyn). Petitioner wanted Evelyn to testify as to statements made to her and other statements made in her presence by Mr. Gatton as an exception to the hearsay rule, statements against Gatton's penal interests. These statements were to the effect that he, Gatton, had killed the victim, Bonnie Gray.

---

1. As we will state, *infra,* the trial court must determine whether the claim of the Fifth Amendment privilege is in good faith or lacks any reasonable basis.

It was proffered that Evelyn would testify that Gatton was an occasional visitor in her home, and that on one or more occasions he had been accompanied by Bonnie Gray, the deceased, whom he identified as his girlfriend. Evelyn alleged at one point in her testimony that on one occasion she heard Gatton and Bonnie arguing with Gatton repeatedly telling Bonnie that "he was never going to let her go no matter what she did." On that occasion Bonnie left the Johnson residence before Gatton, and Gatton subsequently stated: "[T]hat bitch pissed me off" and "if he couldn't have her no one would." [2] After Bonnie's disappearance, but before the discovery of her body, he told Evelyn that "I took care of her," [3] meaning Bonnie.

It was further proffered that Evelyn would have testified that on a subsequent occasion Gatton came to her house when her husband was away and raped her. Several days afterwards, she testified that he threatened her, saying, "[I]f I told

---

**2.** At one point in the trial phase, the court permitted this statement but not as a statement against penal interest, rather, under a state of mind exception. This exchange occurred:

"That if he couldn't have her no one would.

THE COURT: ... Members of the jury ... that testimony to be used by you solely as to the then existing state of mind of Bryan Gatton and you will use it for no other purpose."

**3.** At one point during the trial phase, counsel asked a question, precipitating this exchange:

"[DEFENSE COUNSEL]: In this statement did you say that Bryan Gatton admitted that he killed Bonnie Gray?

[Objection by the State.]

. . .

THE COURT: Why did you do that?

[DEFENSE COUNSEL]: Because it is in the statement.

THE COURT: Sir, I gave specific rulings that was not to come in.

[DEFENSE COUNSEL]: Sir.

THE COURT: I will decide if you will be held in contempt. I am sending the jury out now for lunch."

The judge later said he was referring defense counsel to "bar counsel for disciplinary practices."

Thereafter, the judge individually brought each juror back into the courtroom and directed them to make no inferences from the question.

We have found no further references in the trial transcript to any of these statements being permitted in the presence of the jury.

[anyone about the rape] he would take care of me just like he had took care of Bonnie." Evelyn would have testified that on that occasion he pulled a small handgun from his boot and also a hunting knife from a "case" on his belt, showing them to Evelyn, and saying, "[T]his is what I killed her with." There was also testimony that Evelyn had not initially proffered this information to investigators because she was afraid to get involved. She "didn't want to be the next one dead."

On March 17, 1998, at the end of the hearing on the Motion in Limine, the Circuit Court held that the hearsay testimony of Evelyn should not be admitted as a statement against interest made by Gatton under an exception to the hearsay rule.[4] The Circuit Court stated:

"Now, we also had testimony on the other motion that was filed on March the 6th where the State wishes to exclude statements allegedly made against penal interest by Mr. Gatton. As I mentioned yesterday I asked counsel what the specific statements were because quite frankly the witness we heard from appeared to be rather confused. I did go through part of the transcript last night and I think there are 2 basic statements [5] that we are concerned with.

---

4. Maryland Rule 5–804(b)(3) states:
   "**Rule 5–804. Hearsay exceptions; declarant unavailable.**
   . . .
   (b) **Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
   . . .
   (3) Statement against interest. A statement which was at the time of its making so contrary to the declarant's pecuniary or proprietary interest, so tended to subject the declarant to civil or criminal liability, or so tended to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

5. We presume the trial judge was referring to two types of statements, those occurring before the victim's disappearance and those afterwards. There were actually several such statements discussed during the State's Motion *in Limine* hearing.

The first is quote, Mr. Gatton saying quote, I took care of her and the second one was quote, if you tell anyone I will take care of you just like I took care of Bonnie Gray.

Now, unfortunately I did not have enough time to go in detail and render a detailed opinion this morning. However, I will give you the bottom line. I am reserving the right to supplement that which I hope to do so tomorrow.

In any event at the time the first statement was made according to Ms. Johnson Mr. Gatton was high on drugs and drunk and we were just talking. The second one apparently was made in response, it was proceeded by question if you tell anyone this is what I am going to do.

I find that each of those declarations under the facts given would not be made by a reasonable man understanding that he was making a statement against penal interest.

Additionally I find that each of the statements is not trustworthy and I will go through the lack of reliability factors when I give my detailed opinion.

However, for the sake of opening argument I will grant that motion also." .

The Circuit Court subsequently filed a Memorandum to supplement and clarify its finding from the March 17, 1998 hearing. At the end of the trial, petitioner was convicted of first-degree murder and sentenced to incarceration for life. Petitioner filed an appeal with the Court of Special Appeals which affirmed the decisions of the Circuit Court.

## II. Discussion

We hold that the Circuit Court erred by not admitting the hearsay statements of Gatton into evidence under the declaration against penal interest exception to the hearsay rule. We also provide guidance to questions one and two as presented by petitioner. As we will state, *infra*, the trial court has the discretion to determine whether to allow a defendant to call a witness to testify, who the defendant alleges committed the crime, for the purpose of having the

witness invoke his Fifth Amendment right in the presence of the jury.

## A. Statement Against Interest

It is argued before this Court that at the pretrial hearing [6] the State took the position that the evidence relating to the statements aforesaid allegedly made by Gatton should not be admitted as declarations against penal interest (Gatton was unavailable because he had exercised his rights under the Fifth Amendment to the United States Constitution, and had declined to testify), because Evelyn was not a credible witness, and, therefore, the trial court should find that the statements of Gatton were, in fact, not made.

The seeds for the error that would grow out of the preliminary hearing began when the State, in argument, stated, "Well, if the Court would look to the *Matusky* decision which is really the decision we have to go by because that is the ... most recent Maryland decision on this type of issue." *State v. Matusky,* 343 Md. 467, 682 A.2d 694 (1996), is substantially different factually, and, in some respects, legally, than the present case.

In *Matusky,* the declaration against penal interest was sought to be introduced by the State, and the statement was alleged to be against the defendant's penal interest, not against the penal interest of an alternate suspect. It was an inculpatory statement as to the defendant; however, the statement was not made by Matusky, but was made by a codefendant who was being tried separately. The declarant in *Matusky,* who was also unavailable, would have been, if present to testify, a witness whom Matusky would have had a constitutional right to confront. Here, the declaration was sought to be introduced by the defendant, and thus the defendant's constitutional right to confront the witnesses *against* him is not implicated. Judge Raker, for the Court, noted in *Ma-*

---

**6.** This hearing took place when the trial phase was imminent. The jury had already been selected, but had not been sworn.

*tusky* that when a declaration *against interest of a defendant* is at issue, the confrontation clause requires additional assurances of reliability before such declarations against interest should be admitted. The statement in this case was exculpatory as to petitioner but inculpatory as to Gatton, the person petitioner alleged committed the crime.

In *Matusky,* the Court of Special Appeals held that only the parts of the statement against penal interest that were inculpatory against the declarant were admissible. The portions of the statement that were inculpatory against Matusky, who was not the declarant, should have been redacted from the statement. We noted, in affirming the Court of Special Appeals' reversal of the trial court's admission of the statement, that:

"Writing for the court, Judge Joseph Murphy, Jr.,[7] reasoned that:

Applying *Simmons, Wilson,* and *Williamson*[8] to the facts of this case, we conclude that the trial judge should have excluded the statements in White's declaration that identified appellant as the killer and supplied appellant's motive for the murders. Those statements were simply not self-inculpatory as to White.... With respect to those portions of the declaration in which White described his role, cross-examination of White would have been of marginal utility to appellant. The same cannot be said, however, about other statements in the declaration. It is obvious that appellant had an important interest in cross-examining White [the unavailable out-of-court declarant] with respect to those portions of the declaration in which White (1) identified appellant as the killer and (2) discussed appellant's motive for the murders. Those statements should have been redacted from White's declaration against interest."

---

7. Now Chief Judge of the Court of Special Appeals.

8. *Williamson v. United States,* 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994); *Wilson v. State,* 334 Md. 313, 639 A.2d 125 (1994); *Simmons v. State,* 333 Md. 547, 636 A.2d 463 (1994).

*Id.* at 475–76, 682 A.2d at 698 (quoting *Matusky v. State,* 105 Md.App. 389, 403, 660 A.2d 935, 941 (1995)).

We then examined portions of the parties' arguments relating to redaction cases, cases where collateral portions of statements are redacted (or should have been redacted) from admitted declarations against interest of the declarant. We presented an extensive discussion of the redaction issue. (Redaction issues are not present in the instant case.) It was in that general context that we, in *Matusky,* discussed *State v. Standifur,* 310 Md. 3, 526 A.2d 955 (1987), although portions of that discussion would apply in other contexts as well. We stated in *Matusky:*

"In *State v. Standifur,* 310 Md. 3, 5, 526 A.2d 955, 956 (1987), we considered the question of whether a declaration against the penal interest of an unavailable declarant, offered *by the State against the accused in a criminal trial,* was sufficiently reliable to qualify under the common law exception to the hearsay rule.... We articulated a test for trial judges to apply in deciding whether ... to admit a statement against interest. First, the proponent of the declaration must demonstrate that the declarant is unavailable."

*Matusky,* 343 Md. at 479, 682 A.2d at 699–700 (emphasis added).

We then discussed the second part of the test enunciated in *Standifur,* that the trial court must examine the reasonableness of the statement at the time it was made, formulating an opinion whether the statement was truly against the declarant's penal interest, and whether a reasonable person-declarant would have perceived the declaration to be against his penal interest. Quoting from *Standifur,* we then noted the next test that the trial court must use to assess the admissibility of the declaration:

"[W]hether there are present any other facts or circumstances, including those indicating a motive to falsify *on the part of the declarant,* that so cut against the presumption of

reliability normally attending a declaration against interest that the statements should not be admitted."

*Matusky*, 343 Md. at 480, 682 A.2d at 700 (emphasis added) (quoting *State v. Standifur*, 310 Md. 3, 17, 526 A.2d 955, 962 (1987)).

We then noted that, under *Standifur*, there remains a "final inquiry."

"A statement against interest that survives this analysis, *and those related statements so closely connected with it as to be equally trustworthy*, are admissible as declarations against interest."

*Id.* at 482, 682 A.2d at 701 (quoting *Standifur*, 310 Md. at 17, 526 A.2d at 962).

In *Matusky*, we next focused that part of our opinion on the requirements, and the reasons for them, to be used in dealing with *collateral non-inculpatory* (as to the declarant) statements contained in declarations where those (collateral) statements are not against the interest of the declarant, but are damaging to a defendant and are proffered into evidence by the State. In doing so, we noted that in *Standifur* when the reliability issue was addressed, it was being discussed in the context of the declarant making the statement while he was in police custody, being interrogated in circumstances where he feared a revocation of his parole. We noted our statement in *Standifur* that he "apparently wished to curry favor with the authorities" and noted that for that reason the declaration was not sufficiently reliable. *Matusky*, 343 Md. at 483, 682 A.2d at 701 (quoting *Standifur*, 310 Md. at 20, 526 A.2d at 963). Because the *Standifur* Court held that the declaration was not sufficiently reliable due to the declarant's circumstances and motive to fabricate, it did not consider "separate issues that are possibly generated by the Confrontation Clause." *Matusky*, 343 Md. at 483, 682 A.2d at 701–02 (quoting *Standifur*, 310 Md. at 20, 526 A.2d at 963).

We then discussed in *Matusky* several Supreme Court cases interpreting the Federal Rules of Evidence in respect to the declarations against penal interest exception to the hearsay

evidence rule,[9] including *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). Our discussion in that respect related only to the issue of collateral declarations. Other than restating the standards discussed in *Standifur*, *Matusky* has little, if any relevance to the issues before the trial court, and before this Court, in this case.

One area of key importance in our resolution of the third question involves the *Standifur* case, that predates our adoption of the Rules of Evidence, and the contrary interpretations of that case to which the parties ascribe. To an extent, those contrary interpretations relate to whether, and what part of, the Fifth Circuit case of *United States v. Alvarez*, 584 F.2d 694 (5th Cir.1978), we may or may not have adopted in *Standifur*.

In discussing *Standifur*, we note initially that we recognized in that case that we were then concerned only with the circumstances in which the State sought the admission of statements by an unavailable declarant that *inculpated* the defendant. We said in *Standifur*, "This case requires consideration of a specific class of declarations against penal interest—those offered by the State to inculpate a defendant in a criminal case." *State v. Standifur*, 310 Md. 3, 10, 526 A.2d 955, 958 (1987). A substantial part of the balance of our discussion in *Standifur* was almost exclusively limited to the attempts of the prosecution to have admitted in evidence statements of codefendants, that tend to inculpate the other defendants and exculpate the codefendant declarant. We stated:

"In determining the probable state of mind of a reasonable person in the position of the declarant, it is perhaps as important to consider the totality of circumstances under which the statement was made as to consider the contents of the statement. If experience tells us that we may presume trustworthiness when one is recounting symptoms

9. The statement against interest exception to the hearsay evidence rule is the same in the Federal Rules of Evidence as the Maryland Rule. *See* footnote 2.

to a physician who is to treat him, it also tells us that we must treat as 'inevitably suspect' a statement made to persons in authority and implicating a codefendant, even though the statement also contains an admission of the declarant's culpability. A defendant implicating his confederate may do so to curry favor with the authorities, to achieve a plea bargain, to shift the blame by showing that another was more culpable, or simply to have another with whom to share the blame. In *Lee v. Illinois*,[10] Justice Brennan said for the Court:

> As we have consistently recognized, a codefendant's confession is presumptively unreliable as to the passages detailing the defendant's conduct or culpability because those passages may well be the product of the codefendant's desire to shift or spread blame, curry favor, avenge himself, or divert attention to another."

*Id.* at 13–14, 526 A.2d at 960 (citations omitted). We then discussed several other instances in which the *Lee* Court referred to cases standing for the proposition that declarations against penal interest, where the declarants are codefendants and the declarations tend to inculpate the defendant, are presumptively untrustworthy.

We discussed the necessity for a trustworthiness assessment when the admissibility of these types of statements are being considered. The context of that discussion concerned the trustworthiness of the statement made by the unavailable declarant, not the trustworthiness (*i.e.*, credibility) of the in-court witness relator of the out-of-court declaration. We said in pertinent part:

> "The circumstances surrounding the making of the statement [the out-of-court declaration] must be carefully analyzed to determine the likelihood that the statement was truthful. Critical to this analysis is the state of mind of the [out-of-court] declarant at the time the statement was made. Unless the [out-of-court] declarant then believed the state-

---

**10.** *Lee v. Illinois*, 476 U.S. 530, 545, 106 S.Ct. 2056, 2064, 90 L.Ed.2d 514, 529 (1986).

ment to be against his penal interest, there is no basis for presumed reliability. However, because of the unavailability of the declarant and other problems of proof, the party urging this exception is not required to prove the actual state of mind of the declarant but must prove sufficient surrounding facts from which the trial judge may inferentially determine what the state of mind of a reasonable person would have been under the same or similar circumstances. . . .

. . . The more important criterion is that a reasonable person in the situation of the [out-of-court] declarant would have perceived the statement as deserving at the time he made it. . . .

. . .

In summary, a trial judge considering the admission of a hearsay statement offered as a declaration against penal interest must carefully consider the content of the statement in the light of all known and relevant circumstances surrounding the making of the statement and all relevant information concerning the declarant, and determine whether the statement was in fact against the declarant's penal interest and whether a reasonable person in the situation of the declarant would have perceived that it was against his penal interest at the time it was made. The trial judge should then consider whether there are present any other facts or circumstances, including those indicating a motive to falsify on the part of the [out-of-court] declarant, that so cut against the presumption of the reliability normally attending a declaration against interest that the statements should not be admitted. A statement against interest that survives this analysis, and those related statements so closely connected with it as to be equally trustworthy, are admissible as declarations against interest."

*Standifur*, 310 Md. at 12–17, 526 A.2d at 959–62 (citations omitted) (footnote omitted).

■ The holding in *Standifur* (and in the cases generally) is concerned with assessing the trustworthiness of the out-of-

court statement that inculpates, not exculpates, a defendant.[11] There is nothing in *Standifur,* or in any of our cases of which we are aware, that in a jury trial specifically permits a trial court to make a factual assessment of the trustworthiness of the in-court relator of the out-of-court declaration that exculpates a defendant. The credibility of the witness in such cases is normally to be assessed as witness credibility is generally determined-by the trier of fact.[12] An in-court relator of what she has heard outside the courtroom is, normally, as to whether she actually heard the declaration, in the same witness situation as an in-court relator of what they have seen outside the courtroom. Generally, credibility is tested by examining the witness, especially by cross-examination of the witness by the opposing party, which in the present case at the pre-trial hearing was vigorous and extensive. In a jury trial, it is, generally, not the court's function to assess that type of credibility.

The State and the trial court also considered the issue of whether Gatton had a motive not to be truthful when he made his post-rape comments to Evelyn, because he was attempting to intimidate her to be silent about the rape. In other words, did he, in fact, fabricate it. First, some of his statements against his interests pre-dated the rape and occurred at a time

---

**11.** When we adopted the Rules of Evidence, we incorporated a provision that a declarant's inculpatory statement that exculpates an accused needed corroboration. However, in *Standifur,* that was not the holding.

**12.** The confusion of the witness on the witness stand, created by skillful, persistent, and repetitive cross-examination of the witness, such as occurred in this case, is not sufficient evidence of fabrication, although it may put in issue the witnesses' memory based credibility. That type of credibility issue, however, in a jury trial is for the jury to determine, not for the court. At one point in the argument at the pretrial hearing the State referred to the in-court relator as "paid for." The only evidence of any possible financial benefit to the in-court relator was that defense investigators arranged for her to live in an apartment on a temporary basis because of threats she had received in her prior residence. We have found nothing else in the record on this matter. What we have found is not enough for a reasonable conclusion that she was a "paid for" fabricator.

when he was not trying to intimidate Evelyn. Those pre-rape statements included "he was never going to let her go no matter what she [the victim] did," "that bitch pissed me off," "if he couldn't have her [the victim] no one would," and "I took care of her." The pre-intimidation statements substantially corroborate the post-rape declarations.

Other evidence was also proffered to corroborate Evelyn's testimony about Gatton's statements against interest. There was evidence proffered that Gatton was involved with Mrs. Gray in a love triangle and became upset when she would leave him to go home to Mr. Gray; there was testimony corroborating his presence in the Johnson home when some of the statements were allegedly made within the hearing of both Evelyn and her husband, Mr. Johnson. Testimony was also presented that Gatton was a confidant of Mr. Johnson (whose wife he would later rape); there was also testimony that he had been in possession of jewelry similar to that worn by the murder victim and had Evelyn pawn some of it at her brother's pawn shop.

The jewelry she attempted to pawn included a watch similar to the watch that the victim wore. More importantly, the jewelry Evelyn attempted to pawn included two or three rings similar to rings worn by the victim. When the victim's body was found it was missing the jewelry and also missing five fingers. Additionally, Evelyn testified that Gatton displayed a small handgun and a hunting knife to her when the statements were made. Mrs. Gray was killed by three gunshots to the head by a .22 caliber gun and was also stabbed. Finally, while there was evidence that Evelyn and her husband had a relationship with Gatton prior, and even after, Evelyn's rape and Mrs. Gray's murder, there was little, or no evidence, that Mr. Johnson or Evelyn had any relationship with the petitioner.

Moreover, the fact that Gatton may have been attempting to intimidate Evelyn does not detract from the fact that he, and indeed any reasonable person, would know that the statements he was making about his lover, the petitioner's murdered wife

and the woman Gatton was declaring he had killed, however it was used by him, was a statement against his penal interest. It was not just a statement that he had murdered somebody; it was a statement that he had murdered a specific person with whom he had a relationship. His statement was corroborated by the circumstance that the specific person had, in fact, been murdered.

Under the circumstances here present, petitioner was entitled to present his defense, *i.e.,* that Gatton killed Bonnie Gray. When Gatton, through the invocation of his right to remain silent became unavailable, petitioner was, under the facts of this case, entitled to present to the jury Gatton's declarations against penal interest through the person that allegedly heard the declarations, Evelyn Johnson. Under the circumstances here present, it was error to deny their admission. Moreover, when Gatton declined to testify, and the trial court refused to permit petitioner to require Gatton to invoke his Fifth Amendment privilege in the presence of the jury, addressed *infra,* the error was compounded and clearly prejudicial. The trial court's evidentiary rulings effectively blocked petitioner's ability to present a defense that, under the facts of this case, he was entitled to present. We shall reverse.

Because we are reversing on the third question presented, it is not necessary to resolve the remaining issues. Nevertheless, because of the importance of the issues contained in questions one and two, we shall address them for guidance purposes.

## B. Fifth Amendment Right

In discussing questions one and two, we note that courts should be mindful that a defendant, within evidentiary and procedural restraints, is always entitled to present his full defense to the trier of fact.

At trial, petitioner subpoenaed Gatton to testify. The Circuit Court was made aware that Gatton intended to invoke his Fifth Amendment right against self-incrimination. Gatton

was therefore initially called out of the jury's presence [13] and he was questioned about his role in the murder, to which Gatton invoked his Fifth Amendment right. The Circuit Court determined that Gatton could properly invoke his Fifth Amendment privilege. Petitioner wanted the Circuit Court to make Gatton invoke his Fifth Amendment privilege in the presence of the jury. Petitioner contended that it would be unfair to not allow petitioner to put on a witness that petitioner alleges committed the murder and have that witness invoke his Fifth Amendment privilege in front of the jury because the very invocation of the privilege contains relevant evidentiary inferences supporting the theory of the defense. The Circuit Court, relying on the factually distinguishable cases of *Adkins v. State*, 316 Md. 1, 557 A.2d 203 (1989) and *Bhagwat v. State*, 338 Md. 263, 658 A.2d 244 (1995), stated:

"THE COURT: As I've said before, under *Adkins* and, I think it's *Bhagwat*, they say if the court is aware someone is going to invoke the privilege against self-incrimination, it's supposed to be out of the range of the jury and if there is a case subsequent to that, I think it's '95 in *Bhagwat*, I would be happy to look at it. That's the current status of the law as far as I know.

. . .

THE COURT: Well, I haven't had a chance to read the law review article, but I think at this stage dealing with circuit court, I am pretty well limited on this issue because the last two cases the Court of Appeals are very specific on, who was there when the witness takes the Fifth Amendment. So, I will follow *Adkins* and *Bhagwat* and not allow Mr. Gatton to invoke his privilege before the jury."

Gatton was then called to the stand and asked his name and birth date. Gatton was then instructed to stand next to petitioner and the witness was then excused. No questions about Gatton's exercise of the privilege were permitted. Peti-

---

**13.** As stated, *supra* and *infra,* the trial court must determine whether the claim of the Fifth Amendment privilege is in good faith or lacks any reasonable basis.

tioner subsequently requested that the Circuit Court give a jury instruction in respect to the Fifth Amendment as follows: "A witness has a right under the Fifth Amendment to the United States Constitution and Article 22 of the Maryland Declaration of Rights to testify or not to testify fully when called to the witness stand." The Circuit Court declined to instruct the jury.

Petitioner states that it was his defense at trial that Gatton killed Bonnie Gray and that ample evidence in support of this proposition was produced. The trial court relied on case law that was not applicable to the case *sub judice* when it declined to allow petitioner to question Gatton and have him invoke his Fifth Amendment right in the presence of the jury, believing in the first instance, that it had no discretion at all to do so, and then it also declined to give the requested instruction. Petitioner contends that the trial court's decision was prejudicial to his defense because the jury might have been skeptical as to why petitioner would not question Gatton about the murder, if, as alleged to the jury, he thought that Gatton committed the murder. This might, according to petitioner, lead the jury to believe that petitioner had chosen not to ask Gatton any questions about the murder out of a lack of confidence in his defense. Petitioner contends that he was, at least, entitled to have the trial court give a jury instruction concerning a witness's right to invoke the Fifth Amendment to overcome the prejudice to petitioner of not being allowed to question Gatton about the murder in the presence of the jury. Thus, petitioner contends, the jury was not permitted any evidence relating to the reason Gatton was not produced as a witness, even though the jury knew he was in the courtroom and physically available.

The privilege against self-incrimination can be traced back to the English common law, when the privilege was expressed as *Nemo tenetur prodere seipsum* (No one should be required to betray himself). *Black's Law Dictionary* 1662 (Bryan A. Garner ed., 7th ed., West 1999). Currently, the privilege against self-incrimination is guaranteed by Maryland and federal law. Article 22 of the Maryland Declaration of Rights

(Self incrimination) states "[t]hat no man ought to be compelled to give evidence against himself in a criminal case." The Fifth Amendment to the United States Constitution (Rights of Accused in Criminal Proceedings) states, in relevant part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself. . . ." In *Malloy v. Hogan*, 378 U.S. 1, 3, 84 S.Ct. 1489, 1491, 12 L.Ed.2d 653, 656 (1964), the Supreme Court held that the Fifth Amendment was extended to the States through the Fourteenth Amendment. Article 22 of the Maryland Declaration of Rights has generally been recognized as being *in pari materia* with its federal counterparts. *Richardson v. State*, 285 Md. 261, 265, 401 A.2d 1021, 1024 (1979).[14]

In *Richardson, supra*, a case where the State wanted to have one of its witnesses invoke the privilege before a jury, this Court examined the procedure a court should generally follow when determining if a State's witness can invoke his Fifth Amendment privilege. We stated:

"Our predecessors clearly set forth in numerous cases the procedures to be followed in determining when a witness may refuse to testify on grounds that the evidence adduced may incriminate him. The witness should first be called to the stand and sworn. *Midgett v. State*, 223 Md. 282, 289,

---

**14.** As we indicate, *infra*, *Richardson* involved a prosecution witness. *Midgett v. State*, 223 Md. 282, 164 A.2d 526 (1960), cited in *Richardson*, involved an attempt by a defendant to cause a witness to testify in spite of the witness's assertion of the privilege. In other words it was a case challenging the exercise of the privilege not the manner in which the privilege was exercised. The issue of the assertion of the privilege before a jury was not raised in the case. *Shifflett v. State*, 245 Md. 169, 225 A.2d 440 (1967), also cited in *Richardson*, also involved a State's witness. In *Royal v. State*, 236 Md. 443, 204 A.2d 500 (1964), the defendant was permitted to call codefendants to the stand in the presence of the jury, whereupon they claimed the privilege. On appeal, the issue was whether the codefendants could properly invoke their Fifth Amendment privilege in the first instance. We held that the trial court was correct in allowing the codefendants to invoke the privilege. The defendant did not request an instruction below on the Fifth Amendment privilege but on appeal he claimed "plain error." We declined to decide the issue. Each of the cases relied on in *Richardson* is distinguishable from the present case.

164 A.2d 526, 529 (1960), *cert. denied,* 365 U.S. 853, 81 S.Ct. 819, 5 L.Ed.2d 817 (1961). Interrogation of the witness should then proceed to the point where he asserts his privilege against self-incrimination as a ground for not answering a question. *Shifflett v. State,* 245 Md. 169, 173–74, 225 A.2d 440, 443 (1967). If it is a jury case, the jury should then be dismissed and the trial judge should attempt to 'determine whether the claim of privilege is in good faith or lacks any reasonable basis.' *Midgett v. State, supra,* 223 Md. at 289, 164 A.2d 526. If further interrogation is pursued, then the witness should either answer the questions asked or assert his privilege, making this decision on a question by question basis. *Royal v. State,* 236 Md. 443, 447, 204 A.2d 500, 502 (1964).

However, the standards for determining whether a witness' refusal to testify is justified on fifth amendment grounds were set out in *Hoffman v. United States,* 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). In *Hoffman,* the petitioner had been called to testify before a federal grand jury investigating racketeering. When asked questions concerning the whereabouts of a man who was a fugitive witness, Hoffman refused to respond on the ground that his answers might tend to incriminate him. This claim of privilege was challenged by the government, and a federal district court ordered Hoffman to return to the grand jury and answer the questions that had been asked of him. Hoffman was cited for contempt when he stated in open court that he would not obey the order. The Supreme Court held:

> The privilege afforded not only extends to answers that would in themselves support a conviction under a ... criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a ... crime.... But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer.... The witness is not exonerated from answering merely because he declares that in so doing he would incriminate him-

self—his say—so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, ... and to require him to answer if 'it clearly appears to the court that he is mistaken.' ... However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.' ... [341 U.S. at 486–87, 71 S.Ct. 814 (citations omitted)].

The Court reviewed the circumstances surrounding Hoffman's appearance before the grand jury, and pointed out that the questions were designed to elicit information concerning his association with a fugitive witness, more particularly associations during the time that the witness was eluding the grand jury. Because their questions *might* have forced Hoffman to reveal that he had engaged in criminal activity by helping the witness to avoid an appearance before the grand jury, the court held that it was not ' "*perfectly clear*, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] cannot possibly have such tendency" to incriminate.' 341 U.S. at 488, 71 S.Ct. 814 [emphasis in original]. Hoffman's contempt conviction was reversed.

Although *Hoffman* was decided nearly three decades ago, its continued vitality has been recognized both by the Supreme Court of the United States, *e.g., Maness v. Meyers,* 419 U.S. 449, 461, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975); *Kastigar v. United States,* 406 U.S. 441, 445, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); *Malloy v. Hogan,* 378 U.S. 1, 11–12,

84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), and the courts of this State. *See Smith v. State,* 283 Md. 187, 193, 388 A.2d 539, 542 (1978); *Payne v. Payne,* 33 Md.App. 707, 714–15, 366 A.2d 405, 410 (1976)."

*Richardson,* 285 Md. at 265–67, 401 A.2d at 1024–25 (alterations in original) (footnote omitted). Likewise, in *Bhagwat v. State,* 338 Md. 263, 272–73, 658 A.2d 244, 248 (1995), Chief Judge Bell, then Judge Bell, stated for the Court that:

"The test of the witness's entitlement to invoke the privilege against self-incrimination—(1) whether there is a reasonable basis for the invocation of the privilege; and (2) whether the privilege is invoked in good faith, *see Adkins v. State, supra,* 316 Md. at 6–7, 557 A.2d at 205–06; *Richardson v. State, supra,* 285 Md. at 265, 401 A.2d at 1024; *Midgett v. State,* 223 Md. at 288–92, 164 A.2d at 529–31; McLain, *Maryland Evidence, supra,* § 514.1, at 605 was well stated in *Choi v. State,* 316 Md. 529, 560 A.2d 1108 (1989). It is whether 'the witness has reasonable cause to apprehend danger from a direct answer,' *id.* at 536, 560 A.2d at 1111, and whether it is 'evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.' *Id.* at 537, 560 A.2d at 1111."

*Bhagwat* was thus also primarily concerned with whether, not how, the privilege could be exercised.

In *Vandegrift v. State,* 237 Md. 305, 206 A.2d 250 (1965), we adopted five requirements for a court's finding of prejudicial error when a witness was called by the State and invoked his Fifth Amendment right against self-incrimination. We stated:

"While, fortunately, we have not previously been called upon to consider the situation here complained of, courts in other jurisdictions have had occasion to deal with it. The case most heavily relied on by the appellant is *DeGesualdo v. People,* 147 Colo. 426, 364 P.2d 374 (1961). In that case the Supreme Court of Colorado held that the calling of an

accomplice or coconspirator as a witness under circumstances quite similar to those involved here was prejudicial error. The court stated (at p. 376): 'It is apparent that the district attorney could not have possibly entertained a good faith belief that * * * [the witness] would testify if called and thus the inference is that this was a studied attempt to bring to the attention of the jury his refusal to testify and his claim of the "Fifth Amendment." ' This case is annotated in 86 A.L.R.2d 1443, where the commentator in summarizing the decisions on this question lists five requirements for a court's finding of prejudicial error (pp. 1444–1445):

'1. that the witness appears to have been so closely implicated in the defendant's alleged criminal activities that the invocation by the witness of a claim of privilege when asked a relevant question tending to establish the offense charged will create an inference of the witness' complicity, which will, in turn, prejudice the defendant in the eyes of the jury;

'2. that the prosecutor knew in advance or had reason to anticipate that the witness would claim his privilege, or had no reasonable basis for expecting him to waive it, and therefore, called him in bad faith and for an improper purpose;

'3. that the witness had a right to invoke his privilege;

'4. that defense counsel made timely objection and took exception to the prosecutor's misconduct; and

'5. that the trial court refused or failed to cure the error by an appropriate instruction or admonition to the jury.' " [15]

*Id.* at 308–09, 206 A.2d at 252 (alteration in original).

We have not heretofore opined on an appropriate procedure when a defendant presents a defense that another person committed the offense, but that person who is physically

---

15. This Court does not require the satisfaction of all five factors in order to support a reversal of a defendant's conviction. *Adkins v. State,* 316 Md. 1, 13, 557 A.2d 203, 209 (1989).

present invokes his privilege to remain silent. Our prior cases have, generally, involved State witnesses whose testimony, if given, would inculpate a defendant, unlike the present case, where the proffered testimony, or the invocation of the privilege to remain silent, might provide exculpatory evidentiary inferences.

In the case at bar, where it is the defendant, not the State, desiring to call the witness, the trial court, in deciding against allowing the witness to invoke his Fifth Amendment privilege in front of the jury, relied on the holdings and procedures enunciated in our decisions in *Bhagwat, supra,* and *Adkins v. State,* 316 Md. 1, 557 A.2d 203 (1989). In its brief to this Court, the State also relies upon these two cases as well as citing our cases of *Vandegrift, supra,* and *Allen v. State,* 318 Md. 166, 567 A.2d 118 (1989).[16]

In *Vandegrift,* the State's Attorney called to the witness stand several of Vandegrift's codefendants who had not yet been tried, knowing that the codefendants would refuse to testify based on their right against self-incrimination. In fact, the codefendants did invoke their Fifth Amendment right against self-incrimination. Inculpatory inferences as to the defendant on trial resulted from the invocation of the privilege in that case. This Court reversed *Vandegrift's* guilty verdict, holding that "the actions of the prosecutor in the case before us were prejudicial." *Vandegrift,* 237 Md. 305, 309, 206 A.2d 250, 253 (1965).

The same situation existed in *Adkins.* There, the defendant, David Cleveland Adkins, was convicted of felony-murder and robbery. The issue that this Court had to decide on appeal involved "the propriety of calling an accomplice as a state's witness in the jury's presence when it is known by the court and counsel that the witness will invoke the privilege against compelled self-incrimination." *Adkins,* 316 Md. 1, 2,

---

**16.** We discuss, *infra,* the holdings of this Court in *Adkins, Allen,* and *Vandegrift,* which all concerned the prejudice to a defendant by a witness, who was called by the State or the trial court, invoking his Fifth Amendment privilege in the presence of the jury.

557 A.2d 203, 203 (1989). Adkins and Darryl Troxell were the last people to be seen with the victim, Joseph Michael Teal, when the three men had been drinking together. The next day, Teal was found floating face down in a creek. By the time of Adkins's trial, Troxell had been convicted and sentenced for the murder of Teal, although he was in the process of appealing.

During the trial, a hearing was held on a Motion in Limine filed by Adkins to exclude a conversation that Troxell had with a brother-in-law of Adkins. At the hearing, Troxell invoked his Fifth Amendment right. The trial court stated that the Fifth Amendment right was not available to Troxell because he had already been convicted, even though his appeal was pending. Troxell still invoked his Fifth Amendment right and stated that he would invoke it if called at trial. The trial court allowed the State, in the presence of the jury, to call Troxell at trial. Troxell once again invoked his Fifth Amendment right on a question by question basis, stating that he was afraid of compromising his pending appeal. The trial court, in the presence of the jury, instructed Troxell to answer and then found him in contempt of court.

This Court applied the five factor test stated in *Vandegrift* and found that four of the five factors had been satisfied. Therefore, the Court held that Adkins had been prejudiced, stating:

"In viewing all of the circumstances of the invocation of the privilege by Troxell, we hold that it was prejudicial error for the trial judge to conduct the second inquiry as to unavailability in the presence of the jury. Here, both the court and counsel were aware that the accomplice intended to invoke the privilege against self-incrimination as a result of the prior Motion in Limine testimony of Troxell. He clearly indicated that he would continue to refuse to testify if recalled before the jury, notwithstanding the earlier finding of contempt. Under these facts, the court should not have allowed the accomplice to be recalled before the jury for the purpose of direct examination. The trial judge should have ruled on Troxell's availability during the Motion

in Limine procedure, making a factual finding on the record, out of the presence of the jury.

. . .

Under the circumstances presented, because of our holding that it was prejudicial error for the trial court to require the accomplice to invoke the privilege against self-incrimination in the presence of the jury, we shall reverse Adkins' conviction and remand the case for a new trial."

*Adkins* at 14–16, 557 A.2d at 209–10 (footnotes omitted).

In *Allen,* the defendant, Lloyd Allen, was convicted of robbery with a deadly weapon. Prior to his trial, Allen's counsel proffered that one of the proposed witnesses, Antonio Buie, intended to invoke his Fifth Amendment right against self-incrimination. At a hearing prior to trial, Buie's counsel informed the court that Buie insisted upon asserting his Fifth Amendment privilege. The State indicated that it intended to have Buie called as a court's witness because the State had prosecuted Buie in the past and could not vouch for Buie's credibility. The court did not rule at the hearing.

At trial, Buie was called by the trial court to testify over his counsel's objection. Buie invoked his Fifth Amendment privilege. The court then excused the jury and found Buie in contempt of court. The next day, outside of the presence of the jury, the court determined that it would call Buie as its witness because the court could protect Buie from future prosecution and, therefore, Buie did not have a basis for asserting his Fifth Amendment privilege. The trial court determined that the questions and answers could occur in the presence of the jury despite the fact that Buie intended to invoke his Fifth Amendment privilege. Buie was called to testify and he invoked his Fifth Amendment privilege in response to several questions asked by the prosecutor in the presence of the jury. Applying the test enunciated in *Vandegrift,* this Court determined that Allen was unfairly prejudiced when the court called Buie, who invoked his Fifth Amendment privilege, as its own witness. We held that the court calling Buie to testify was the same as if he was called by the State.

The issue presented in the case *sub judice* is a case of first impression for this Court as the facts are distinguishable from *Allen, Adkins,* and *Vandegrift.* All three of those cases concerned a witness being called to testify by the prosecution or by the court, when they knew or should have known that the witness was going to invoke his Fifth Amendment privilege. Those cases all concerned the prejudicial effect—the inculpatory effect—that this would have on a defendant, then at trial, because the witnesses in all of the cases were alleged to be complicit in the crime for which the defendant was on trial. The witnesses invoking their Fifth Amendment privilege in the presence of the jury would have the prejudicial effect of an adverse inference *that would implicate* the defendant in the crime. The case at bar involves a defendant (petitioner) who wants to call a witness (Gatton), who was not an accomplice, but rather the person the defendant claims committed the crime, to testify or invoke his Fifth Amendment privilege in the presence of the jury. The witness was being called for exculpatory purposes. Petitioner contends that he was prejudiced by not being able to have Gatton invoke his Fifth Amendment privilege in the presence of the jury because he had built his entire defense on the concept that Gatton committed the crime. Petitioner further contends that Gatton invoking his privilege outside of the presence of the jury provides the jury with an incorrect inference that petitioner's defense was frivolous or insincere because he did not question Gatton about the crime.

Because we are reversing on other grounds, it is not necessary that we determine in this case what the proper procedure should be when a defendant desires to present a witness whom a defendant asserts is the perpetrator of the crime for which a defendant is charged, and that witness desires to exercise his right to remain silent. We note again, however, that the line of Maryland cases that address the subject do so, generally, in contrary factual circumstances to the case at bar.

█ We believe that a trial court has some discretion to consider permitting a defendant in a criminal case to call a

witness to the stand to invoke his Fifth Amendment privilege in the presence of the jury if the trial court first determines whether sufficient evidence has been presented, believable by any trier of fact, of the possible guilt of the witness the defendant wants to cause to invoke his Fifth Amendment privilege before the jury. The court, in the exercise of that discretion, must consider, as well, the prejudice to the defense of not allowing the potentially exculpatory witness to invoke his Fifth Amendment privilege in the presence of the jury. In opining that such discretion exists, we note that such testimony, if permitted, might be subject to the same restraints that a trial judge normally may exercise as to relevancy, repetitiveness, and the like.

In the case *sub judice,* addressing the discretion of the trial court, the Court of Special Appeals stated:

"In *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), the Supreme Court held that 'the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.' In *Kramer v. Levitt,* 79 Md.App. 575, 558 A.2d 760 (1989), we addressed the evidentiary significance of a party's invoking the Fifth Amendment privilege in a civil case, in response to discovery requests. We read *Baxter* to mean that three criteria must be met before an inference may be drawn against a person exercising his Fifth Amendment privilege: 1) the action must be a civil case; 2) the party seeking to draw the inference must have made out a *prima facia* case, so that he is not relying on the adverse inference to establish an element of his cause of action; and 3) the person invoking the privilege must be a party, not a witness. *Id.* at 586, 558 A.2d 760. On that basis, we held that party who had asserted the privilege in response to discovery could not testify on the same topic at trial and that the opposing party was entitled to an instruction telling the jurors that they could, but need not, draw an inference from the party's invocation of the Fifth Amendment privilege that

his answers to the discovery requests would have been adverse to his interests. *Id.* at 56–89 [586–89].

Given that when it is asserted in a civil case, by a party, the Fifth Amendment privilege may take on evidentiary significance, we disagree with the courts that take the sweeping view that there can never be probative value to a witness's assertion of the privilege in a criminal case and, therefore, trial courts lack discretion to permit a witness to take the stand when it is known that the witness will invoke the privilege. The question is not whether a witness's assertion of the privilege is devoid of evidentiary value in a criminal case but whether, as a matter of policy, a trier of fact in a criminal case should be permitted to give that act evidentiary value and, if so, under what circumstances. We agree with the courts that, mindful that the defendant's Sixth Amendment rights [17] may be implicated, recognize discretion in the trial court to decide the issue based on considerations of relevancy and probative value versus potential prejudicial effect. Thus, in Maryland, the question whether, upon request of a criminal defendant, a witness may be questioned in front of the jury when it is known that he will reasonably and in good faith assert the testimonial privilege must be determined by application of Md. Rules 5–401 and 5–403." [18]

---

**17.** The Sixth Amendment to the United States Constitution (Right to Speedy Trial, Witnesses, etc.) states:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

**18.** Maryland Rules 5–401 and 5–403 state:

"**Rule 5–401. Definition of 'relevant evidence'.**

'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

*Gray v. State,* 137 Md.App. 460, 516–17, 769 A.2d 192, 224–25 (2001). While we are reversing the Court of Special Appeals's affirmance of the trial court, we do not disagree with its statement above.

■ While we agree with that part of the Court of Special Appeals's holding, we disagree with their approval of the trial court's failure to use its discretion in the case *sub judice.* The Court of Special Appeals stated that "whether the trial court exercised its discretion in this regard matters not." *Id.* at 517, 769 A.2d at 225. As we indicate, in some circumstances, including these circumstances, it matters. We conclude that just as a trial court must determine whether a witness is properly invoking his Fifth Amendment privilege, the trial court must exercise its discretion and determine if a defendant will be unfairly prejudiced by the court not allowing the defendant to call a potentially exculpatory witness that the defendant and the trial court know will invoke his Fifth Amendment privilege in the presence of the jury. We are not holding in the case *sub judice* that sufficient evidence has been presented that would entitle the defendant to have Gatton take the stand in the presence of the jury and invoke his Fifth Amendment privilege. That is for the trial court to determine upon any retrial. In the exercise of discretion, it should always be remembered that such a defendant is entitled to have his defense fully presented to the jury.

■■ While trial courts are exercising their discretion in determining if a potentially exculpatory witness called by a defendant should be allowed to invoke his Fifth Amendment privilege in the presence of the jury, the trial courts need to make sure that "sufficient" evidence has been presented to make the matter relevant. "Sufficient" is defined as "[a]de-

---

**Rule 5–403. Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.**

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

quate; of such quality, number, force, or value as is necessary for a given purpose." *Black's Law Dictionary* 1447 (Bryan A. Garner ed., 7th ed., West 1999). Sufficient evidence must be presented so that any trier of fact might possibly and reasonably believe that the proposed witness might have committed the crime instead of the defendant. If sufficient evidence is proffered, then the trial court may proceed with an analysis of whether the defendant would be unfairly prejudiced by prohibiting this witness from invoking his Fifth Amendment privilege in the presence of the jury.

Other courts have also held that the determination of whether a witness should be allowed to invoke his Fifth Amendment privilege in the presence of the jury is in the trial court's discretion (in some instances, even where the prosecutor calls the witness). *United States v. Kaplan*, 832 F.2d 676, 684 (1st Cir.1987) (if a witness intends to invoke the Fifth Amendment privilege, it is in the discretion of the court whether to allow him to take the stand); *United States v. Johnson*, 488 F.2d 1206, 1211 (1st Cir.1973) ("If it appears that a witness intends to claim the privilege as to essentially all questions, the court may, in its discretion, refuse to allow him to take the stand."); *United States v. Bowman*, 636 F.2d 1003, 1013 (5th Cir.1981) ("The general rule is that once the trial court has satisfied itself as to the validity of the witness's Fifth Amendment claim, it may, in its discretion, decline to place the witness on the stand for the purpose of eliciting a claim of privilege."); *United States v. Vandetti*, 623 F.2d 1144, 1147 (6th Cir.1980) (the trial court can allow a prosecutor to call a witness who will assert his Fifth Amendment privilege if the prosecutor's case would be seriously prejudiced by not offering him as a witness); *United States v. Martin*, 526 F.2d 485, 487 (10th Cir.1975) ("In such circumstance it was well within the discretion of the trial court to refuse to allow the informant to be called to the witness stand and be compelled to thereafter invoke his Fifth Amendment right in the presence of the jury. . . ."); *Ex parte Reeves*, 463 So.2d 177, 178 (Ala. 1984) ("'Trehern should have been required to take the stand in the presence of the jury and invoked his privilege in

response to any question asked by the defendant which would have elicited incriminating evidence if answered."); *State v. McDaniel,* 136 Ariz. 188, 194, 665 P.2d 70, 76 (1983) ("In light of these decisions, we must modify our prior holdings ... insofar as they suggest an *absolute* right to call witnesses regardless of the fact that they may properly choose to invoke their Fifth Amendment privilege in response to all relevant questions."); *State v. Berry,* 658 S.W.2d 476, 479 (Mo.App. 1983) ("The refusal to permit a witness to testify lies within the discretion of the trial judge when it is claimed ... that the witness will invoke his claim of privilege."); *People v. Thomas,* 51 N.Y.2d 466, 472, 415 N.E.2d 931, 934, 434 N.Y.S.2d 941, 944 (1980) ("[T]he decision whether to permit defense counsel to call a particular witness solely 'to put him to his claim of privilege against self incrimination in the presence of the jury' rests within the sound discretion of the trial court."); *People v. Patrk,* 191 A.D.2d 718, 718, 595 N.Y.S.2d 798, 799 (1993) ("It is well-settled that the trial court has broad discretion to determine whether or not to allow a defendant to call a witness for the purpose of having the witness invoke his privilege against self-incrimination before a jury."); *State v. Stanfield,* 134 N.C.App. 685, 692–93, 518 S.E.2d 541, 545–46 (1999) (the trial court did not abuse its discretion by not allowing the defendant to call a witness who would invoke his Fifth Amendment privilege in the presence of the jury); *Porth v. State,* 868 P.2d 236, 240 (Wyo.1994) ("We hold that the trial court has discretion to allow or disallow the defendant to call a witness to the stand who the court knows will invoke his Fifth Amendment privilege against self-incrimination in the presence of the jury.").[19]

---

**19.** We note that there are courts that have held that a trial court can not allow a witness to testify if the witness is only going to invoke his Fifth Amendment privilege in the presence of the jury. *United States v. Licavoli,* 604 F.2d 613, 624 (9th Cir.1979); *Bowles v. United States,* 439 F.2d 536, 541–42 (D.C.Cir.1970); *People v. Fletcher,* 193 Colo. 314, 316–17, 566 P.2d 345, 347 (1977); *Apfel v. State,* 429 So.2d 85, 86–87 (Fla.Dist.Ct.App.1983); *State v. Cvetich,* 73 Ill.App.3d 580, 584, 29 Ill.Dec. 418, 391 N.E.2d 1101, 1105 (1979); *State v. Lashley,* 233 Kan. 620, 625–27, 664 P.2d 1358, 1364–65 (1983); *People v. Dyer,* 425 Mich.

When a defendant proffers a defense that the crime was committed by another person and the defendant wants to call as a witness that person only to invoke his Fifth Amendment privilege against self-incrimination on the witness stand in the presence of the jury, the trial court, on the record, should make a determination of whether sufficient other evidence has been proffered that, if believed by any trier of fact, might link the accused witness to the commission of the crime. If the trial court finds that such sufficient evidence, linking the accused witness to the crime and believable by any trier of fact, exists that could possibly cause any trier of fact to infer that the witness might have committed the crime for which the defendant is being tried, then the trial court has the discretion to permit, and limit as normally may be appropriate, the defendant to question the witness, generally, about his involvement in the offense and have him invoke his Fifth Amendment right in the jury's presence.

Where the trial court fails to permit a "Gatton-type" of witness to invoke the Fifth Amendment in the presence of the jury, the trial court, upon appropriate request, should give a full instruction to the jury, that the witness, under the circumstances described above, has invoked his right against self-incrimination, and, therefore, is unavailable to the defendant. Even if a "Gatton-type" of witness is permitted to invoke a Fifth Amendment privilege, in the presence of the jury, either party, in some circumstances, might still be entitled to have an appropriate instruction given to the jury.

In the present case, the trial court believed it did not have any discretion to permit defendant to call Gatton to the stand for the purpose of having him invoke his Fifth Amendment

---

572, 390 N.W.2d 645 (1986); *State v. Nunez,* 209 N.J.Super. 127, 131–33, 506 A.2d 1295, 1297–99 (1986); *Commonwealth v. Pritchard,* 270 Pa.Super. 461, 468, 411 A.2d 810, 814 (1979); *State v. Hughes,* 328 S.C. 146, 152–55, 493 S.E.2d 821,823–25 (1997), *cert. denied,* 523 U.S. 1097, 118 S.Ct. 1674, 140 L.Ed.2d 798, *cert. denied, sub nom., Washington v. United States,* 524 U.S. 940, 118 S.Ct. 2348, 141 L.Ed.2d 718 (1998); *Chambliss v. State,* 633 S.W.2d 678, 683–84 (Tex.App.1982), *aff'd,* 647 S.W.2d 257 (Tex.Crim.App.1983).

privilege in the presence of the jury. Accordingly, the trial court exercised no discretion. Because we are reversing on another grounds, we do not have to determine whether the trial court abused its discretion on this issue, although, we note, that our cases hold that the actual failure to exercise discretion is an abuse of discretion.

## III. Conclusion

We hold that it was prejudicial error for the trial court to refuse to admit in evidence through the testimony of Ms. Johnson, the declaration against Gatton's penal interest.

In light of our holding, we decline to address further the remaining issues.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR CHARLES COUNTY AND TO REMAND THE CASE TO THAT COURT FOR A NEW TRIAL; COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY CHARLES COUNTY.**

RAKER, J., concurred and filed opinion joined by WILNER and HARRELL, JJ. WILNER, J., concurred and filed opinion joined by RAKER and HARRELL, JJ. BATTAGLIA, J., dissented and filed opinion.

RAKER, Judge, concurring, joined by WILNER & HARRELL, JJ.:

I join in the opinion of the Court reversing the judgments of conviction and in the concurring opinion of Judge Wilner. The trial court erred in failing to admit testimony regarding Brian Gatton's statements as declarations against his penal interest pursuant to Maryland Rule 5–804(b)(3). The trial court also erred in refusing to permit petitioner to call Gatton to the witness stand to invoke his Fifth Amendment privilege against self-incrimination before the jury.

The hearsay question presented in this case, the admissibility of Gatton's declaration through the in-court witness, Evelyn Johnson, is resolved by consideration of Maryland evidentiary law and, particularly, the law of hearsay; it does not implicate the Sixth Amendment right to confrontation. In evaluating the admissibility of a hearsay statement on the basis of the declaration-against-penal-interest exception, we should avoid conflating the hearsay exception with constitutional analysis under the Confrontation Clause of the Sixth Amendment. This is so for several reasons. First, although the statement-against-penal-interest exception most often arises in the context of criminal cases, the hearsay exception applies equally in civil cases. Second, although the rule excluding hearsay and the Confrontation Clause protect similar values, they are often different in application and substance, and a higher standard as to admissibility is required under the Confrontation Clause. *See Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970) (explaining that the Court has never equated the hearsay rule and the Confrontation Clause); *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) (stating that, although the hearsay rules and the Confrontation Clause protect similar values, a statement may fall within a recognized hearsay exception while its admission would nonetheless violate the Confrontation Clause); John J. Capowski, *Statements Against Interest, Reliability and the Confrontation Clause,* 28 SETON HALL L.REV. 471, 494 (1997).

Because the dissent conflates the hearsay rule and the Confrontation Clause, I think it important to clarify and expand upon their distinctions. *See, e.g.,* diss. op. at 586 n. 1 (discussing the "firmly rooted" exceptions to the hearsay rule and admissibility for the purpose of the Confrontation Clause); diss. op. at 586 (citing *Simmons v. State,* 333 Md. 547, 560, 636 A.2d 463, 469 (1994), a Confrontation Clause case, and erroneously stating that "there must be a showing of particularized guarantees of trustworthiness" as the standard under Maryland Rule 5–804(b)(3)); diss. op. at 586 (proposing that the principles of the Confrontation Clause provide the basis for the additional guarantees of trustworthiness for inculpating

statements). I also write separately to address the Court's reference in *State v. Matusky,* 343 Md. 467, 481 n. 7, 682 A.2d 694, 700 n. 7 (1996), to *United States v. Alvarez,* 584 F.2d 694, 702 (5th Cir.1978).

As to the exercise of a witness's Fifth Amendment privilege before the jury, I agree with the majority opinion and the concurring opinion of Judge Wilner that, when the witnesses is called by the defendant, it is within the trial court's discretion whether to allow that witness to exercise his or her Fifth Amendment right before the jury. I write separately to address the relevancy *vel non* of the witness's assertion of the Fifth Amendment, the permissible scope of inquiry before the jury, and jury instructions.

### I. *The Declaration Against Penal Interest*

. At trial, petitioner called Gatton to testify. When Gatton invoked his Fifth Amendment privilege against self-incrimination and refused to testify, petitioner called Johnson and sought to introduce through her several exculpatory statements purportedly made to her by Gatton against his penal interest. *See* maj. op. at 534–37 (detailing the several exculpatory statements that petitioner wished to introduce through Johnson's testimony). Gatton's statements were offered by petitioner as a declaration against penal interest, an exception to the hearsay rule under Maryland Rule 804(b)(3). The primary hearsay issue in this case is whether the trial judge abused his discretion in failing to admit into evidence Johnson's testimony that Gatton had admitted to killing Bonnie Gray.

The controversy between the parties as to the corroboration requirement is whether the trial judge may take into consideration the credibility of the in-court witness. The State argues that the statements do not fit within Rule 804(b)(3) because a reasonable person in Gatton's position would have made the statements even though they were not true. The State argues that, based on the language of *Matusky,* 343 Md. at 481 n. 7, 682 A.2d at 700 n. 7 (citing *Alvarez,* 584 F.2d at 702), a trial

court should consider any facts or circumstances that would cut against the presumption of the reliability of a statement against interest, including, but not limited to, the credibility of the in-court witness. The dissent agrees with the State.[1]

Petitioner argues that statements against penal interest are simply exceptions to the prohibition against hearsay, that corroborating circumstances do not include consideration of the credibility of the in-court witness, and that consideration of credibility usurps the jury's role as fact finder.

A declaration against penal interest is one that is contrary to the declarant's penal interest at the time that it was made, such that a reasonable person would not have made the statement unless that person believed it to be true. A declaration against penal interest is admissible in evidence as an exception to the rule precluding hearsay so long as the declarant is unavailable. To be contrary to a person's penal interest, the statement must tend to subject the person to criminal liability. The theory underlying this exception is that persons ordinarily do not make statements against their interest unless they are true. *See* Fed. R. Evid. 804(b)(3) advisory committee's notes; *Lilly v. Virginia*, 527 U.S. 116, 126–27, 119 S.Ct. 1887, 1895, 144 L.Ed.2d 117 (1999) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 299, 93 S.Ct. 1038, 1047–48, 35 L.Ed.2d 297 (1973)) (noting that the exception is founded on the assumption "that a person is unlikely to fabricate a statement against his own interest at the time it is made"); *State v. Standifur*, 310 Md. 3, 17, 526 A.2d 955, 962 (1987).[2]

---

1. The dissent conflates the evidentiary basis for admitting the statements against interest and the Confrontation Clause analysis in concluding that the trial court should consider the credibility of the in-court witness when assessing the reliability of the hearsay statement.

2. Dating back to the Sussex Peerage Case, 8 Eng. Rep. 1034 (1844), a declaration confessing to the commission of a crime was not admissible in evidence as a declaration against penal interest. *See* McCormick on Evidence, § 318 (John Strong, ed., 5th ed.1999). This rule, followed by most courts in this country, came under criticism, particularly by Professor Wigmore, who wrote:

Before a statement may be admitted in evidence as a statement against interest, the court must find it to be reliable. Professor Capowski sets forth what appears to me to be an appropriate approach to resolving statement-against-interest and Confrontation Clause issues, suggesting that it "would be [more appropriate] to recognize the distinct stages or steps involved in the decisions and avoid the conflation of exception and constitutional analysis." Capowski, *supra*, at 510. He writes:

"After deciding the unavailability of the declarant, a court needs to discern if any portion of a statement is against interest and, if so, which parts of the statement are against interest, which portions are self-serving, and whether there

---

"The only practical consequences of this unreasoning limitation are shocking to the sense of justice; for, in its commonest application, it requires, in a criminal trial, the rejection of a confession, however well authenticated, of a person deceased or insane or fled from the jurisdiction (and therefore quite unavailable) who has avowed himself to be the true culprit.

... It is therefore not too late to retrace our steps, and to discard this barbarous doctrine, which would refuse to let an innocent accused vindicate himself even by producing to the tribunal a perfectly authenticated written confession, made on the very gallows, by the true culprit now beyond the reach of justice."

5 JOHN HENRY WIGMORE, EVIDENCE § 1477 (3d ed.1940). Wigmore's view was embraced by Justice Holmes in his now famous dissent in *Donnelly v. United States*, 228 U.S. 243, 277–78, 33 S.Ct. 449, 461, 57 L.Ed. 820 (1913) (Holmes, J., dissenting), a case in which the Supreme Court refused to recognize any penal interest exception to the hearsay rule, permitting only pecuniary and perhaps proprietary interests as sufficiently reliable to be admissible. *Donnelly* received a great deal of criticism and, as a result, when the Federal Rules of Evidence were drafted and under consideration by Congress, several different versions emerged providing for the admission of declarations against penal interest. The Federal Rules of Evidence, and those of most states, now permit admission into evidence of declarations against penal interest. The Supreme Court ultimately recognized, in *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), that "the Due Process Clause affords criminal defendants the right to introduce into evidence third parties' declarations against penal interest—their confessions—when the circumstances surrounding the statements 'provide considerable assurance of their reliability.'" *Lilly v. Virginia*, 527 U.S. 116, 130, 119 S.Ct. 1887, 1897, 144 L.Ed.2d 117 (1999).

are any portions that are neither against interest nor self-serving. . . .

. . . In civil cases, the analysis should end here with the court admitting those portions that are against interest and the neutral portions that are closely related.

At this stage in criminal cases, the court should begin its Confrontation Clause analysis. The court should decide whether the statement has sufficient reliability or 'indicia of reliability' to be admitted absent confrontation."

*Id.* at 510–511. In assessing reliability, Professor Capowski identifies three forms of reliability and different standards for applying each one, noting:

"First, there is the standard for reliability that is to be applied in establishing an [hearsay] exception. This standard, 'exception reliability,' requires that the type of statement have some general underpinning of reliability in logic and human experience. For example, in the case of a statement against interest, persons are unlikely to say things against their interest unless they are true.

Once an exception is established, individual statements have to be tested to see if they fit the requirements of the exception and thus have sufficient reliability to be admissible. This form of reliability, 'admission reliability,' involves a specific application of reliability in the case being tried or decided on appeal.

In a criminal case, a third form of reliability analysis is required because of the application of Confrontation Clause principles to the potential introduction of evidence that cannot be cross-examined. . . . '[I]ndicia of reliability' or 'Confrontation Clause reliability' requires a higher standard of reliability analysis than 'admission reliability.' A major subpart of 'Confrontation Clause reliability' is 'firmly rooted exception reliability.' 'No independent inquiry into reliability is required when evidence "falls within a firmly rooted hearsay exception." ' "

*Id.* at 483–84. When the Confrontation Clause is not implicated, as in the case before us, step three does not come into play. In this regard, the Supreme Court noted that:

"because hearsay statements of this sort are, by definition, offered by the accused, the admission of such statements does not implicate Confrontation Clause concerns. Thus, there is no need to decide whether the reliability of such statements is so inherently dependable that they would constitute a firmly rooted hearsay exception."

*Lilly,* 527 U.S. at 130, 119 S.Ct. at 1897, 144 L.Ed.2d 117.

Statements against penal interest ordinarily are offered in evidence, in criminal trials, in three circumstances: (1) as voluntary admissions against the declarant, (2) as exculpatory evidence offered by a defendant to establish that the declarant committed the offense, and (3) as evidence offered by the prosecution to establish the guilt of an accomplice of the declarant. *See id.* at 128, 119 S.Ct. at 1895, 144 L.Ed.2d 117. In the instant case, we are concerned with the second situation.

Under Maryland Rule 5–802, hearsay is not admissible except as provided by applicable constitutional provisions or statutes. Rule 5–804(b) outlines exceptions to the hearsay rule that apply when the declarant is unavailable as a witness. One such exception is for statements against interest, which are defined as follows:

"A statement which was at the time of its making so contrary to the declarant's pecuniary or proprietary interest, so tended to subject the declarant to civil or criminal liability, or so tended to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

Maryland Rule 5–804(b)(3). Thus, under Rule 5–804(b)(3), a codification of the common law hearsay exception for declarations against interest, a hearsay statement exculpating the defendant may be admitted in evidence if (1) the declarant is unavailable, (2) the statement is genuinely adverse to the declarant's penal interest, and (3) corroborating circumstances clearly indicate the trustworthiness of the statement.

The Circuit Court, in the case *sub judice*, found that the statements failed the second and third parts of the test: that the statements "would not be made by a reasonable man understanding that he was making a statement against penal interest" and that the statements were not trustworthy. Accordingly, the judge refused to admit the statements into evidence.

In this case, the threshold requirement of unavailability under the rule is not disputed and has been satisfied. Gatton, having asserted his Fifth Amendment privilege not to testify, was not available. *See Green*, 399 U.S. at 168 n. 17, 90 S.Ct. at 1940 n. 17, 26 L.Ed.2d 489; *United States v. Harrell*, 788 F.2d 1524 (11th Cir.1986); *Nance v. State*, 331 Md. 549, 572, 629 A.2d 633, 645 (1993).

The next inquiry under the Rule, then, is whether Gatton's statements were against his penal interest. The statements "I took care of her," "he would take care of me just like had took care of Bonnie," and "this is what I killed her with" amounted to admissions that he had killed the victim, Bonnie Gray. The State does not contend otherwise.

The trial court held that the statements do not fit within Rule 804(b)(3) because a reasonable person in Gatton's position would have made the statements even though they were not true. The trial court found that Gatton in no way expected any harm from his statements because he was "high and drunk" he was speaking to "his crack-companion's wife, a woman he had already physically attacked whom he has so far successfully cowed into silence," and he probably could have expected a benefit from the statement—Evelyn's silence.

Gatton's alleged statements sufficiently tended to subject him to criminal liability that a reasonable man in his position would not have made the statements unless he believed them to be true. Some of his remarks amounted to a clear admission that he killed Bonnie Gray, and others amounted to statements incriminating him in her murder. A reasonable person in Gatton's position would have realized that comments attributed to him implicating him in Bonnie Gray's murder would have tended to subject him to criminal liability. Even though he may have been under the influence of drugs or alcohol, his statements would be important evidence against him if he were on trial for the murder, and he had to realize the detrimental character of the statements. The trial court erred, therefore, in finding that they did not pose the sort of threat to his interest that the hearsay exception contemplates.

I am not unmindful of the circumstances under which the proffered statements were made and that Gatton may not have so readily expected his remarks to have been repeated to the police. However, the rule does not require that the witness actually be speaking to someone who could cause him to be prosecuted. *See Harrell,* 788 F.2d at 1527. Furthermore, the contextual circumstances do not "so far impugn the reliability presumed from the remarks' disserving character as to take them outside the first part of the Rule." *United States v. Barrett,* 539 F.2d 244, 251 (1976). *See Chambers,* 410 U.S. at 300, 93 S.Ct. at 1048, 35 L.Ed.2d 297 (holding that a confession made "spontaneously to a close acquaintance" was sufficiently reliable); *United States v. Bagley,* 537 F.2d 162 (5th Cir.1976) (finding that a reasonable man would not falsely admit to the commission of serious crime to a cellmate knowing that there was a chance, even if slight, that it could lead to his conviction).

Since the statements were against Gatton's penal interest, they were admissible if corroborating circumstances clearly indicated the trustworthiness of the statements. As I have noted, the requirement of corroborating circumstances was designed to protect against the possibility that a statement, offered by the defense, would be fabricated to exculpate the

defendant. I think that the factors relied upon by the trial court are better considered under the part of the rule requiring an evaluation of whether, overall, there is sufficient corroboration clearly to indicate the trustworthiness of the statement. Professor McCormick notes:

> "Both the proper role for, and definition of, corroboration for statements against interest is almost hopelessly confused. . . .
>
> Turning first to statements that exculpate the defendant, the federal courts have disagreed on whether the corroboration requirement applies to the veracity of the in-court witness testifying that the statement was made in addition to the clearly required showing that the statement itself is trustworthy."

McCORMICK ON EVIDENCE, § 319 (John Strong, ed., 5th ed.1999). Courts have recognized that the nature of the corroboration required by Federal Rule 804(b)(3) is not precisely delineated, although some courts have identified several factors deemed relevant to determining whether sufficient corroboration exists to allow the declarations into evidence under the rule. *See United States v. Bumpass,* 60 F.3d 1099, 1102 (4th Cir.1995).[3] In considering the identified factors, courts must be vigilant in evaluating the context in which a statement is offered—in particular, by whom and under what circumstances. For example, if offered by the State against the defendant, the Confrontation Clause may be implicated,

---

3. In *United States v. Bumpass,* 60 F.3d 1099 (4th Cir.1995), Judge Paul Niemeyer, writing for the United States Court of Appeals for the Fourth Circuit, noted that "the precise nature of the corroboration required by Rule 804(b)(3) cannot be fully described." *Id.* at 1102. He suggested, however, that factors to consider under the rule include:

    "(1) whether the declarant had at the time of making the statement pled guilty or was still exposed to prosecution for making the statement, (2) the declarant's motive in making the statement and whether there was a reason for the declarant to lie, (3) whether the declarant repeated the statement and did so consistently, (4) the party or parties to whom the statement was made, (5) the relationship of the declarant with the accused, and (6) the nature and strength of independent evidence relevant to the conduct in question."

    *Id.*

triggering additional and often different considerations than when a statement is offered by the defendant as a hearsay exception. *See, e.g., Idaho v. Wright,* 497 U.S. 805, 822–23, 110 S.Ct. 3139, 3150, 111 L.Ed.2d 638 (1990) (holding that courts cannot rely on corroborating evidence to conclude that a hearsay statement is trustworthy for the purposes of the Confrontation Clause).[1]

It is important to note that *Alvarez* involved the admissibility of a hearsay statement that was inculpatory as to the accused and, as such, was a Confrontation Clause case. That issue, however, is not before us today.[5]

---

4. Again, it is important to keep in mind that the standards for admissibility under the Confrontation Clause are stricter than under the hearsay exception, requiring independent corroboration, while the hearsay exception under the rule does not. That is why it is so important to keep the analysis separate and not to use hearsay and Confrontation Clause cases interchangeably.

5. Courts around the country are split as to the viability of the factor, outlined in *United States v. Alvarez,* 584 F.2d 694, 701 (5th Cir.1978), that, before a hearsay statement is admissible under 804(b)(3), the trial court should consider as a threshold matter the credibility of the in-court witness in assessing the trustworthiness of the statement. *See, e.g., United States v. Katsougrakis,* 715 F.2d 769, 777 (2nd Cir.1983) (noting that "[w]e do not adopt the position taken by the Fifth Circuit [in *Alvarez*] that the credibility of the in-court witness must be evaluated before the jury is permitted to hear testimony that inculpates both the out-of-court declarant and the accused").

   In *Alvarez,* the court "was also concerned that a failure to impose a corroboration requirement would allow statements against interest to become an easier alternative to admission of coconspirator statements, which it believed required external proof of the conspiracy." McCormick on Evidence § 319 (John Strong, ed., 5th ed.1999). A statement made by one coconspirator during the course of the conspiracy and in furtherance thereof is admissible in evidence as a hearsay exception. *See* Maryland Rule 5–803(5) ("[a] statement by a coconspirator of the party during the course and in furtherance of the conspiracy"). Under *Bourjaily v. United States,* 483 U.S. 171, 183, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987), in the Confrontation Clause analysis, as a firmly rooted hearsay exception, no independent inquiry into reliability is required. *See Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). Thus, if the statement in *Alvarez* had been admitted as a declaration against penal interest, it could, in fact, have expanded the admissibility of coconspirators' statements to include ones made after the conspiracy ended. Thus, when offered by the State as an inculpatory statement, implicating the Confrontation Clause,

Professor McCormick sets out what I believe should be the rule when the defendant offers a statement against penal interest as an exception to the hearsay rule: "As a matter of standard hearsay analysis, the credibility of the in-court witness regarding the fact that the statement was made is not an appropriate inquiry." McCormick, *supra*, at § 319. *See United States v. Katsougrakis*, 715 F.2d 769, 777 (2nd Cir. 1983) (disapproving of *Alvarez*, 584 F.2d at 702, and noting that "to require a preliminary assessment of the in-court witness' credibility would, in our judgment, be a usurpation of the jury function"); *United States v. Atkins*, 558 F.2d 133 (3rd Cir.1977) (rejecting the credibility of an in-court witness as a consideration in whether to exclude evidence under Rule 804(b)(3) and stating that "[r]ule 804(b)(3) directs the court to the trustworthiness of the declarant, not of the witness"); *United States v. Goodlow*, 500 F.2d 954, 958 (8th Cir.1974) (noting, in considering the admissibility of a statement as a declaration against penal interest hearsay exception, that "[t]o reason that the credibility of these [in-court] witnesses is such that their testimony would not be believed attempts to substitute judicial discretion in an area where fact-finding preroga-

---

under those circumstances, it may well be appropriate for the court, as a threshold matter, to consider the credibility of the in-court witness in assessing the trustworthiness of the statement.

I suggest, however, that the viability of the *Alvarez* factor in the center of this controversy, even within a Confrontation Clause analysis, may be in serious doubt based upon the language of Justice Stevens plurality opinion in *Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999). In discussing the appropriate standard of review for determining whether a hearsay statement has particularized guarantees of trustworthiness for Confrontation Clause purposes, the plurality opinion, adopting a *de novo* standard of review, stated:

"But the surrounding circumstances relevant to a Sixth Amendment admissibility determination *do not include the declarant's in-court demeanor (otherwise the declarant would be testifying) or any other factor uniquely suited to the province of trial courts.* For these reasons, when deciding whether the admission of a declarant's out-of-court statements violates the confrontation Clause, courts should independently review whether the government's proffered guarantees of trustworthiness satisfy the demands of the Clause."

*Id.* at 134, 527 U.S. 116, 119 S.Ct. at 1900, 144 L.Ed.2d 117 (emphasis added).

tives control"); *People v. Cudjo,* 6 Cal.4th 585, 25 Cal.Rptr.2d 390, 863 P.2d 635, 649 (1993) (holding that the credibility of an in-court witness was not a proper consideration in the context of the admissibility of evidence offered under the declaration-against-interest hearsay exception).

As a basic hearsay matter, the witness is present in court, can be fully cross-examined as to whether the statement was actually made, and the fact-finder can and should fully evaluate the witness's credibility. Unlike the hearsay declarant who is necessarily unavailable to testify, the in-court witness is present in the courtroom and is subject to cross-examination, enabling the jury to assess credibility as with any other witness. The admissibility of the statement should be determined under the ordinary rules of evidence and should be controlled by Rule 5–104.[6] The rules require only that the corroborating circumstances clearly indicate the trustworthiness of the statement; they need not remove all doubt with respect to the hearsay statement. *See Bumpass,* 60 F.3d at 1102 (citing *United States v. Brainard,* 690 F.2d 1117, 1124 (4th Cir.1982)). Judge Moylan, writing for the Court of

---

**6.** Maryland Rule 5–104 provides as follows:

"(a) Questions of admissibility generally. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of section (b). In making its determination, the court may, in the interest of justice, decline to require strict application of the rules of evidence, except those relating to privilege and competency of witnesses.

(b) Relevance conditioned on fact. When the relevance of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding by the trier of fact that the condition has been fulfilled.

(c) Hearing of jury. Hearings on preliminary matters shall be conducted out of the hearing of the jury when required by rule or the interests of justice.

(d) Testimony by accused. The accused does not, by testifying upon a preliminary matter of admissibility, become subject to cross-examination as to other issues in the case.

(e) Weight and credibility. This rule does not limit the right of a party to introduce before the trier of fact evidence relevant to weight or credibility."

Special Appeals, in *Jacobs v. State,* 45 Md.App. 634, 415 A.2d 590 (1980), succinctly expressed the same view as follows:

"The trustworthiness in issue in this regard is the trustworthiness of the declaration, assuming it to have been made and to have been made in the form recounted from the witness stand. The trustworthiness of the witness who serves as the mere conduit for the out-of-court declaration is, on the other hand, tested by other devices such as the oath and cross-examination at the trial itself. All too frequently, we allow our distrust of the witness on the stand to be transmuted into a mistrust of the out-of-court declaration, and this frequently subconscious transfer serves only to blur analysis."

*Id.* at 643 n. 2, 415 A.2d at 595 n. 2. As Judge Niemeyer said in *Bumpass,* "the level of corroboration therefore must be sufficient that cross-examination would add little to test the hearsay's reliability." *Bumpass,* 60 F.3d at 1102.

Judge Cathell, writing for the Court, has set out the circumstances that provide an assurance of reliability to justify the admissibility of the statements. I agree. Gatton surely was unavailable, and his statements were against his penal interest. The trial judge erred in considering Johnson's credibility beyond the ordinary witness considerations under Rule 5–104. The statements were sufficiently corroborated to establish their trustworthiness. The jury should have been permitted to hear Johnson's testimony with respect to Gatton's statements.

## II. Invocation of Fifth Amendment Privilege

I agree with both the majority and concurring opinions that it is within the discretion of the trial judge to permit a defendant to call a witness before the jury to invoke the Fifth Amendment privilege against self-incrimination. I join the opinion of the Court with the understanding that, in "single culprit crimes," *see* Peter W. Tague, *The Fifth Amendment: If an Aid to the Guilty Defendant, an Impediment to the Innocent One,* 78 GEO. L.J. 1, 6 (1989), a defendant is not barred, as a matter of law, from calling a witness before the

jury for the witness to exercise his or her Fifth Amendment right and from attempting to convince the jury that the witness's assertion of the Fifth Amendment privilege inferentially supports his or her claim of innocence.

Judge Cathell, writing for the Court, has crafted a workable and limited exception to the general rule in criminal cases that a witness may not invoke the Fifth Amendment before the jury. I would require, however, that the defense inform the prosecution and the court of the theory of the defense, *i.e.*, "some other dude did it," and of the intention to call the alternate suspect as a witness.[7] I would also caution trial judges, in the exercise of their discretion in controlling the conduct of the trial, to make sure that the practice is not abused and that counsel will not be permitted to pose fact-specific questions to the witness before the jury with the sole purpose of creating prejudicial inferences from the assertion of the privilege. Counsel should not be permitted, as counsel wished to do in the instant case, to ask a long string of fact-specific questions designed to suggest to the jury that, but for the privilege, the answer to the questions would have been "yes."

It is beyond question that it is error under the Fifth Amendment to the United States Constitution, *see Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), as well as under Article 22 of the Maryland Declaration of Rights and Maryland Code (1957, 1998 Repl.Vol., 2000 Supp.) § 9–107 of the Courts and Judicial Proceedings Article, *see Smith v. State*, 367 Md. 348, 353–54, 787 A.2d 152, 155 (2001), to instruct a jury in a criminal case that it may draw an inference of guilt from a *defendant's* failure to testify. Maryland recognizes, however, as do many other states, that the invocation of the Fifth Amendment privilege by a party in a civil case may result in an adverse inference. *See Baxter v. Palmigiano*, 425 U.S. 308, 317, 96 S.Ct. 1551, 1557, 47 L.Ed.2d

---

7. It is clear in the instant case that there was no surprise to the State that the theory of the defense was that Gatton killed Bonnie Gray and that the defense intended to call Gatton as a witness.

810 (1976); *Robinson v. Robinson,* 328 Md. 507, 615 A.2d 1190 (1992).[8] In this case, there is a significant difference—we are not talking about the defendant, but rather a witness, called to testify at the trial by the defendant.

The dissent properly points out that many jurisdictions bar the drawing of an adverse inference in any criminal case *per se.* There are several reasons for this view. *See* Tague, *supra,* at 13. In addition to evidentiary concerns of relevancy and prejudice, courts cite to the possibility of collusion between the defendant and the witness, symmetry between the prosecution and the defendant,[9] and a concern for the interest of the witness in not having to assert the privilege publicly.[10] *See id.* According to those courts, it is high drama, causing unfair prejudice, when a witness "takes the Fifth Amendment."

In addition, there are many reasons why a witness might invoke the protection of the Fifth Amendment other than an

---

8. I recognize that, in *Robinson v. Robinson,* 328 Md. 507, 615 A.2d 1190 (1992), and *Baxter v. Palmigiano,* 425 U.S. 308, 317, 96 S.Ct. 1551, 1557, 47 L.Ed.2d 810 (1976), the courts were dealing with a party and not merely a witness in the case.

9. I do not accept the symmetry argument-that because the State cannot benefit from the inference, the defendant should be precluded from doing so. The State has the power to grant use immunity, which is not available to the defendant. *See* Maryland Code (1957, 1998 Repl.Vol., 2001 Supp.) § 9–123 of the Courts and Judicial Proceedings Article (authorizing the State to grant use immunity to a witness compelled to testify in a criminal prosecution or before a Grand Jury). The dissent is simply wrong in stating that "[w]hen a witness invokes his constitutional right to remain silent, he or she is no longer available to the State or the defense." Diss. op. at 601.

10. The dissent overstates the witness's interest in not having to invoke the privilege and the protection that the witness may be entitled to enjoy. *See* diss. op. at 596–98. Although it may be embarrassing and, even under some circumstances, harmful to the witness to assert the Fifth Amendment in public (at the defendant's trial before a jury), the witness' protection is limited to the right to remain silent and to the protection against subsequent use by the prosecution against him or her at any future trial. *See* Peter W. Tague, *The Fifth Amendment: If an Aid to the Guilty Defendant, an Impediment to the Innocent One,* 78 Geo. L.J. 1, 51 (1989).

admission of guilt for the crime charged. A witness need not be guilty of any offense in order to invoke the privilege. We have held that a witness may invoke the Fifth Amendment privilege against self-incrimination if "the witness has reasonable cause to apprehend danger from a direct answer." *Choi v. State,* 316 Md. 529, 536, 560 A.2d 1108, 1111 (1989) (quoting *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951)). The privilege is invoked properly whenever the witness's answers "will tend to incriminate him or subject him to fines, penalties, or forfeitures." *Smith v. State,* 283 Md. 187, 194, 388 A.2d 539, 542–43 (1978) (quoting *Counselman v. Hitchcock,* 142 U.S. 547, 564, 12 S.Ct. 195, 198, 35 L.Ed. 1110 (1892)). These issues, however, can be dealt with through jury instructions. Also, the witness, when invoking the privilege, is not available for cross-examination. Of course, there are constitutional implications preventing the drawing of such an inference when the privilege is invoked by the defendant in a criminal case. *See Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). Although there are good reasons for precluding a witness from ever invoking the Fifth Amendment privilege before the jury, I find that there is no good basis for distinguishing between civil cases and criminal cases in which it is not the defendant who is invoking the privilege.

If the court permits a witness to invoke the Fifth Amendment before the jury, either party should be entitled to a jury instruction indicating that the invocation of the privilege against self-incrimination is not, in and of itself, evidence that the witness is guilty of a crime. Of course, counsel should be permitted to argue any appropriate inferences raised by the evidence at the trial.

Judges WILNER and HARRELL have authorized me to state that they join in this concurring opinion.

WILNER, Judge, concurring, in which RAKER and HARRELL, JJ., join.

I join in the Court's opinion but write separately to address an issue, which I think is an important one, that is not

addressed in that opinion. It has to do with the trial court's discretion to require a defense witness, whom the court knows intends to exercise a valid right not to testify, to exercise that right before the jury. I am satisfied that the court has some discretion in that regard. I believe, however, that, first, the court must be very careful before using that procedure, and, second, if it does allow the defense to force the witness to exercise his or her right in front of the jury, the court may limit the scope and extent of the examination.

What is desired by the defendant in this setting is for the jury to draw an inference from the witness's very invocation of his or her Constitutional right to be free from compelled self-incrimination that the witness is, in fact, guilty of whatever crime is the subject of the inquiry. What the court must keep in mind, however, is that, although the right itself may not be invoked unless a reasonable basis is established for it, the refusal to answer does not necessarily mean that the witness has committed the offense or that, if he or she *did* commit an offense, that would exculpate the defendant. It may just as well be that, by answering, the witness could be providing self-incriminating evidence of some *other* offense, having nothing whatever to do with the crime charged to the defendant, or some lesser offense that *is* related in some way to the crime charged to the defendant but that would not serve to exculpate the defendant—being an accessory or a conspirator, for example.

The second problem lies in the extent of any examination that *is* allowed. Maryland Rule 5–403, which allows a court to exclude evidence, even relevant evidence in a criminal case, if the probative value of that evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence, is applicable. The defendant's proper goal may be achievable by the propounding of just a few basic questions to the witness. The court, in my view, is not required to allow a wholesale fishing expedition by defense counsel that, in effect, puts the witness on trial through unanswerable accusations.

One may easily imagine, in this case, Mr. Gatton being subjected to dozens, or hundreds, of questions, and being required to invoke his Constitutional right of silence over and over and over.

In many instances, perhaps in most, the best course of action would be to have the witness invoke the privilege and make clear his or her unwillingness to testify, outside the presence of the jury, and for the court then to inform the jury that (1) the witness was called to testify, (2) the witness invoked his or her right not to answer questions, (3) the witness may not be compelled to give testimony that might be self-incriminating, and (4) it is for that reason that the jury will not be hearing from the witness. Except in those situations where it is particularly important for the witness to be called to the stand before the jury—where, for example, the witness is willing to testify to some matters but not to others—this procedure not only informs the jury of the true state of affairs but gives the defendant the full prospect of the desired inference without the danger of unfair prejudice either to the witness or to the State.

I do not read the Court's opinion as precluding the exercise of the court's discretion in these manners.

Judges RAKER and HARRELL have authorized me to state that they join in this concurring opinion.

BATTAGLIA, Judge, dissenting.

Without question, the majority and I are on opposite ends of the spectrum in this case. Where the majority believes the trial court has no discretion to consider the reliability of an in-court witness to an out-of-court statement against penal interest, I believe the court may consider, and properly did consider, the in-court witness's credibility in concluding that the *statement itself* was untrustworthy. Where the majority believes that a trial court should have discretion in determining whether a witness may be called to the stand for the sole purpose of invoking his or her right to remain silent, I believe a court has no discretion and should never knowingly or

intentionally permit a witness to be used for the sole purpose of invoking his or her right to remain silent before a jury. My differences with the majority are not easily bridged, and therefore, I respectfully dissent.

I.   Statements Against Penal Interest—Discretion of the Trial Court

With respect to the portion of the majority's opinion regarding the statements against penal interest, there exist three grounds for my dissent. First and foremost, I do not believe that the majority has shown the proper and required deference to the trial court's evidentiary ruling in this case. Second, contrary to the majority's view, I believe that in assessing the trustworthiness of the declaration against penal interest, the credibility of the in-court speaker of the statement is a factor *inherent* in the determination of the statement's reliability. Third, while the majority and I agree that the Confrontation Clause and other related principles provide the bases for the additional guarantees of trustworthiness for statements which inculpate the accused, I believe that the majority disregards the fact that the language of Rule 5-804(b)(3), itself, provides the basis for the requisite additional guarantees of trustworthiness for statements which exculpate the accused.

A.   The Standard of Review—Deference to the Trial Court's Evidentiary Rulings

Evidentiary rulings are within the domain of the trial judge, and should not be disturbed unless clear error is found. *See Merzbacher v. State,* 346 Md. 391, 404, 697 A.2d 432, 439 (1997)(stating that the admissibility of evidence is within the "considerable and sound discretion of the trial court"). The standard of review, then, is particularly deferential when an appellate court considers issues involving the propriety of admitting, or not admitting, evidence at a trial. *See Void v. State,* 325 Md. 386, 393, 601 A.2d 124, 127 (1992) (affirming that trial judges are afforded "broad discretion in the conduct

of trials in such areas as the reception of evidence")(quoting *McCray v. State*, 305 Md. 126, 133, 501 A.2d 856, 860 (1985)).

Overturning evidentiary rulings cannot simply be a matter of disagreement with the trial judge in the outcome at which he or she arrived. The trial court must have unequivocally abused its discretion by basing its rulings on factual findings which were clearly erroneous or facially incorrect legal postulates. *See Williamson v. United States*, 512 U.S. 594, 604, 114 S.Ct. 2431, 2437, 129 L.Ed.2d 476, 486 (1994)(stating that the trial court's determination on whether a statement should be admitted under the statement against penal interest hearsay exception is fact-intensive); *State v. Booze*, 334 Md. 64, 68, 637 A.2d 1214, 1216 (1994)(explaining that a trial judge's rulings regarding the conduct of trials, including that which constitutes rebuttal testimony "may be reversed only when it constitutes an abuse of discretion, i.e., it has been shown to be both 'manifestly and substantially injurious' ")(quoting *Mayson v. State*, 238 Md. 283, 289, 208 A.2d 599, 602 (1965)). Accordingly, in our appellate review, we generally extend the trial court great deference in determining the admissibility of evidence and will reverse only if a clear abuse of discretion has been shown. *Robinson v. State*, 348 Md. 104, 121, 702 A.2d 741, 749 (1997) (referring to evidentiary determinations regarding relevancy). It is, in part, in accordance with and pursuant to the deferential standard of review required of appellate courts that I differ from the majority's decision today.

Pursuant to Maryland Rule 5–802, hearsay generally is inadmissible at trial unless the statement qualifies as a recognized exception to the hearsay rule. Maryland Rule 5–804(b)(3) recognizes declarations against penal interest as a hearsay exception if the declarant, in this case Gatton, is unavailable and the trial court finds the statement to be reasonably trustworthy.[1] Specific to the hearsay exception employed in this case, the trial judge has a duty to evaluate

---

1.  Maryland Rule 5–804(b)(3) provides:

    (b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

    * * *

the trustworthiness of the statement; stated differently, whether the evidence is sufficiently reliable for admissibility is a factual determination within the sound discretion of the trial judge. *See State v. Standifur,* 310 Md. 3, 19–20, 526 A.2d 955, 963 (1987); *see also Powell v. State,* 324 Md. 441, 453, 597 A.2d 479, 485 (1991). Our brethren in the Court of Special Appeals have correctly stated that when considering the declaration against penal interest exception to the hearsay rule, trial courts must make a factual determination concerning whether the statement is trustworthy or "sufficiently reliable for admissibility." *See Wilkerson v. State,* 139 Md.App. 557, 577, 776 A.2d 685, 697 (2001); *see also Jacobs v. State,* 45 Md.App. 634, 653, 415 A.2d 590, 600 (1980)(stating that "when dealing with the rule against hearsay and [the declaration against

---

(3) Statement against interest. A statement which was at the time of its making so contrary to the declarant's pecuniary or proprietary interest, so tended to subject the declarant to civil or criminal liability, or so tended to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

The penal interest exception to the hearsay rule is not a firmly rooted one. "[W]here hearsay statements are admitted under an exception which is not considered firmly rooted, then they are presumptively unreliable and inadmissible for Confrontation Clause purposes and must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Simmons v. State,* 333 Md. 547, 559, 636 A.2d 463, 469 (1994)(quoting *Chapman v. State,* 331 Md. 448, 457, 628 A.2d 676, 681 (1993)(internal quotations omitted)). We acknowledged that the Supreme Court has specified that several classic hearsay exceptions fall within the "firmly rooted" category; however, a declaration against penal interest is not one of them. *See Chapman v. State,* 331 Md. 448, 457 n. 3, 628 A.2d 676 (1993). The hearsay exceptions that fall within the "firmly rooted" category include: dying declarations, prior testimony, business records, public records, excited utterances, statements made in seeking medical treatment, and co-conspirator statements. *Id.* Where the hearsay in question falls within a "firmly rooted" hearsay exception "no independent inquiry into reliability is required...." *Bourjaily v. United States,* 483 U.S. 171, 183, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144, 157 (1987)(discussing *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)).

penal interest] exception[ ] ... admissibility is a question addressed exclusively to the discretion of the trial judge"). Similarly, decades earlier in *Brady v. State*, 226 Md. 422, 174 A.2d 167 (1961), *aff'd*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), Chief Judge Brune, speaking for this Court stated, "[t]o what extent a confession or admission of a third party is free of collusion and bears the indicia of trustworthiness is a question which we think should be entrusted in the first instance to the sound discretion of the trial judge." [2] *Id.* at 429, 174 A.2d at 171. As discussed hereinafter, I believe the trial judge was thorough and thoughtful in his discussion of, and rulings on, Gatton's statements. In the absence of an apparent abuse of discretion, I am unwilling to reverse the trial court's evidentiary rulings.

B. Assessing the Reliability of the In–Court Speaker of a Declaration Against Penal Interest Which Exculpates the Accused

In *Standifur, supra*, we articulated a test by which trial courts could determine whether to admit statements under the

2. The United States Supreme Court discussed appellate review of lower court's determinations regarding whether a hearsay statement had particularized guarantees of trustworthiness in *Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999), which involved hearsay evidence offered by the prosecution to establish the guilt of an alleged accomplice (the defendant) of the declarant. The defendant argued that his rights pursuant to the Confrontation Clause were violated when the hearsay statement of his alleged accomplice was admitted. *See* 527 U.S. at 120, 119 S.Ct. at 1892, 144 L.Ed.2d at 124. With respect to the appellate review of these claims, the Supreme Court stated, "as with other fact-intensive, *mixed question of constitutional law* ... independent review is ... necessary ... to maintain control of, and to clarify, the legal principles governing the factual circumstances necessary to satisfy the protections of the Bill of Rights." *Id.* at 136, 119 S.Ct. at 1900, 144 L.Ed.2d at 134 (emphasis added)(quoting *Ornelas v. United States*, 517 U.S. 690, 697, 116 S.Ct. 1657, 1662, 134 L.Ed.2d 911, 919 (1996))(internal quotations omitted). The case presently before this Court, however, is not the "mixed question of constitutional law" to which the Supreme Court was referring in *Lilly v. Virginia*. On the contrary, the determination the lower court made in this case was the fact-intensive application of evidentiary rules traditionally left to the province of the trial judge.

statement against penal interest hearsay exception. Once the unavailability of the declarant is established,[3] the court must:

carefully consider the content of the statement in the light of all known and relevant circumstances surrounding the making of the statement and all relevant information concerning the declarant, and determine whether the statement was *in fact* against the declarant's penal interest and whether a *reasonable person* in the situation of the declarant would have perceived that it was against his penal interest at the time it was made.

*Id.* at 17, 526 A.2d at 962 (emphasis added). The trial court, in this case, ruled that Gatton's out-of-court statements, *i.e.,* "I took care of her [Bonnie]" and that "I'll take care of you [Evelyn] like I took care of Bonnie," were, *in fact,* declarations against penal interest in that they may involve substantial exposure to criminal liability or have probative value in a trial against the declarant. The trial court did not believe, however, that a reasonable person in the declarant's shoes would have believed the statement to be against penal interest. *See Standifur,* 310 Md. at 13, 526 A.2d at 960 (stating that "[t]he *more important criterion* is that a reasonable person in the situation of the declarant would have perceived the statement as disserving at the time he made it")(emphasis added). The court reasoned that Gatton's statements, which were made while he was in altered states due to alcohol and drug use,[4] were more likely to have been "bravado designed to bolster his threat" against Evelyn to keep quiet about Gatton's rape of Evelyn a few days earlier. Concluding that Gatton's statements were made in an intoxicated state, and that Gatton

---

3. Gatton's invocation of the privilege against self-incrimination is sufficient to establish unavailability. *Simmons,* 333 Md. at 559, 636 A.2d at 469.

4. As the trial court correctly noted, "a trial judge may be called upon to determine whether a reasonable person who is under the influence [of] alcohol or drugs would have understood the disserving nature of a particular statement." *Standifur,* 310 Md. at 13, 526 A.2d at 959–60. Evelyn testified that, at the time the statements were made, Gatton was "high and drunk."

anticipated that his statement would result in some benefit, *i.e.,* Evelyn's silence, rather than harm to himself, the court determined that a reasonable person in Gatton's circumstances could not have perceived that the statement was against his penal interest at the time it was made.[5]

As the *Standifur* Court pronounced, a trial court's inquiry does not end there. After considering whether the statement was both facially and objectively a declaration against penal interest, the court must also consider:

> whether there are present *any other facts or circumstances,* including those indicating a motive to falsify on the part of the declarant, *that so cut against the presumption of reliability* normally attending a declaration against interest that the statements should not be admitted.

*Id.* at 17, 526 A.2d at 962 (emphasis added). These considerations conform to the last line of Maryland Rule 5–804(b)(3) which limits the admissibility of particular declarations against interest. A declaration which tends to exculpate the defendant and expose the declarant to criminal liability "is *not* admissible *unless* corroborating circumstances clearly indicate the trustworthiness of the statement." Md. Rule 5–804(b)(3). Thus, the default rule is that statements which exculpate the defendant, and inculpate another, are inadmissible and the burden is on the proponent "to establish that it is cloaked with

---

5. The trial court cited case law from other jurisdictions to support its conclusions. *See State v. Cooper,* 20 Kan.App.2d 759, 892 P.2d 909, 914 (1995) ("... if a declarant has no good reason to believe that the assertion will bring harm, or believes the assertion is more likely to cause benefit rather than harm, such assertion will not be excepted from the hearsay rule."); *People v. Pecoraro,* 175 Ill.2d 294, 222 Ill.Dec. 341, 677 N.E.2d 875, 882 (1997)(holding that an admission to a murder when coupled with a "threat apparently born of jealousy" would not be admissible, as it "may simply represent bravado designed to bolster the threat"). This does not mean, as the petitioner alludes, that one must have a clear-headed desire to disclose the truth to the authorities to qualify as a statement against penal interest. On the contrary, the courts above simply note that when the circumstances surrounding the statement strongly indicate ulterior motives for the declaration, courts should hesitate before admitting such a statement under a hearsay exception.

indicia of reliability ... [which] means that there must be a showing of particularized guarantees of trustworthiness." *Simmons,* 333 Md. at 560, 636 A.2d at 469 (quoting *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597, 608 (1980)(internal quotations omitted)).

We have not, until today, been presented with an issue concerning the propriety of a trial court's exclusion of a declaration against interest based largely on the "trustworthiness" requirements of Rule 5–804(b)(3). We have, however, discussed the factors which some courts employ in determining whether a declaration against interest is sufficiently corroborated to be deemed trustworthy. In *State v. Matusky,* 343 Md. 467, 682 A.2d 694 (1996), we cited the factors used by the Fifth Circuit Court of Appeals:

> (1) whether there is any apparent motive for the out-of-court declarant to misrepresent the matter, (2) the general character of the speaker, (3) whether other people heard the out-of-court statement, (4) whether the statement was made spontaneously, (5) the timing of the declaration and [(6)] the relationship between the speaker and the ... [declarant].

*Id.* at 482 n. 7, 682 A.2d at 701 n. 7 (quoting *United States v. Alvarez,* 584 F.2d 694, 702 n. 10 (5th Cir.1978)). As the Court of Special Appeals correctly noted, the trial court performed a factor-by-factor analysis of Gatton's out-of-court statement in order to determine its trustworthiness pursuant to the factors we furnished in *Matusky. See Gray v. State,* 137 Md.App. 460, 476–77, 769 A.2d 192, 201 (2001). The trial court concluded that: (1) Gatton had a motive to misrepresent the matter to Evelyn in that Gatton wanted to induce Evelyn's silence concerning the fact that Gatton had allegedly raped Evelyn; thus, regardless of whether Gatton had actually "taken care of Bonnie," Gatton wanted to effectively threaten Evelyn; (2) Evelyn's character was questionable [6]—she was an admitted

---

6. With respect to the second factor, the primary issue of contention in the present case, I have provided the trial court's entire analysis of the general character of the speaker (Evelyn) when I discuss the majority's

crack user and gave testimony that was "self-contradictory, confused, inexact, and incredible;" she failed to disclose Gatton's declaration against interest until nearly two years after the statements were allegedly made; prior to her "disclosure," Evelyn repeatedly denied having any knowledge about Gatton, and only came forward under circumstances in which she may be highly motivated to fabricate Gatton's statements; (3) the statement was heard only by Evelyn; (4) the statements were spontaneous; (5) Evelyn's testimony about the timing of when the statements were made was unclear; and (6) Gatton and Evelyn's relationship was not one of mutual confidantes, rather, Gatton's motivation to speak to Evelyn was only to induce her silence. After thoroughly analyzing and balancing these factors, the court found these circumstances to be a greater indicia of the untrustworthiness of the statements, rather than supportive of its reliability. Concluding that the statements were inherently untrustworthy, the trial court ruled the statement to be inadmissible.

The petitioner in the case *sub judice* argues, and the majority apparently agrees, that the factual findings made by the trial court with respect to these six factors were clearly erroneous. The petitioner relies predominantly on the fact that the trial court considered the credibility of Evelyn in its determination that the declaration was untrustworthy and asserts that such a consideration is improper for a trial judge and should be left to the province of the jury. The trial court, in this case, considered *several* factors, *one* of which was the character of the speaker. In so doing, the trial court concluded that it "had serious doubts about whether the statement was in fact made, a concern that also cuts against its admissibility." [7]

---

ill-founded concerns about the inherent credibility assessment in greater detail *infra*. *See infra* note 7 and accompanying text.

7. In the trial court's written memorandum regarding its rulings on the admissibility of Gatton's hearsay statements, the court provided a detailed analysis and discussion of the "general character of the speaker" under the second *Alvarez* factor as follows:

The Court interprets "the general character of the speaker" to mean an evaluation of the in-court witness ... among the circumstances to be considered are those surrounding the witness' disclosure of the statement. *Demby v. State,* 695 A.2d 1152, 1158 (Del. 1997).

Evelyn Johnson is an admitted crack cocaine user. Her testimony was self-contradictory, confused, inexact, and incredible. Despite a carefully structured direct examination, in which events were placed in reference to when Ms. Johnson heard about Bonnie Gray's disappearance and death, Ms. Johnson's already shaky chronology completely fell apart under cross-examination. Bryan Gatton's visits dwindled from nearly every day over a period of months to a handful of times within a two week period. His "confession" moved from a few days after he last brought Bonnie to the Johnson home to as much as a month later. The number of visits Bonnie and/or Becky made fluctuated, as did the details of each visit.

In one particularly telling example, Ms. Johnson testified on direct that the last time Bonnie came, she brought Becky with her. Bonnie and Mr. Gatton had their argument (apparently with Becky still in the room). Mr. Gatton walked out with Bonnie and Becky, and Ms. Johnson watched Mr. Gatton take Becky by the hand and buckle her into her seat. On cross-examination, however, Ms. Johnson admitted that she had never watched Mr. Gatton or Bonnie leave, and had never seen Bonnie's car except for the one time Bonnie drove everyone to a liquor store, and the buckling in of Becky, which she had described in detail, was just an assumption.

The Court notes that at least one jurisdiction, California, has held that the credibility of the in-court witness is "not a proper consideration" for the trial judge, but should be left to the jury. *People v. Cudjo,* 6 Cal.4th 585, 25 Cal.Rptr.2d 390, 863 P.2d 635, 649 (1993). Even California recognizes, however, that if the falsity of a witness' testimony is apparent " 'without resorting to inferences or deductions,' " that witness' testimony will not be sufficient to bring the declaration against penal interest to the jury. *Id.* at 649. Such is the case here. The Court has serious doubts about whether the statement was in fact made, a concern that also cuts against its admissibility. *United States v. Bagley,* 537 F.2d 162, 167 (5th Cir.1976).

Most troubling of all are the timing and the circumstances surrounding Ms. Johnson's initial disclosure of the statement. *See, e.g. Demby,* 695 A.2d at 1158 (witness' disclosure of the declarant's statement found trustworthy under the circumstances). Nearly two years elapsed before Ms. Johnson told anyone about Mr. Gatton's statement. Mr. Gatton's conviction and twenty-year sentence for car jacking did not result in Ms. Johnson telling Mr. Johnson, or anyone else, about the statement. Two visits by defense investigators had not produced the statement; in fact, Ms. Johnson denied knowing Bonnie and Becky Gray altogether. On the third visit, [according to Ms. Johnson, a defense investigator would interview her, she would move to escape him, and the investigator would track her down], Ms. Johnson told the investigators she knew Bonnie and Becky, but "didn't want to say anything because I was scared." She told them she would only talk if they would protect her. Ms. Johnson moved

Generally speaking, the issue of credibility of a witness is an issue within the province of the finder of fact. When the issue is the trustworthiness of the hearsay statement against penal interest, however, the trial judge may consider, as one of several factors, the credibility of the witness as well. *See United States v. Bagley,* 537 F.2d 162, 167 (5th Cir.1976); *see also United States v. Satterfield,* 572 F.2d 687, 692 (9th Cir.1978), *cert. denied,* 439 U.S. 840, 99 S.Ct. 128, 58 L.Ed.2d 138 (1978)(discussing in dicta some of the justifications for considering the trustworthiness of the witness when determining whether the admit the hearsay statement). This is not to say that the court is permitted to exclude testimony solely on the basis of the lack of credibility of the witness; credibility of the speaker should be a consideration only to the extent that it *influences the trustworthiness of the statement itself,* i.e. whether the statement was made or the actual substance of the statement itself. It is the *statement itself* that is in contention; thus, a court must affirm the statement's trustworthiness prior to allowing a jury to hear the declaration. When attempting to determine the actual content of the declaration or whether a hearsay statement was made, it is both natural and necessary for the trial court to consider the veracity of the person purporting to have heard, and now testifying to, the questionable and inherently unreliable statement. *See Lee v. Illinois,* 476 U.S. 530, 543, 106 S.Ct. 2056, 2063, 90 L.Ed.2d 514, 528 (1986)(stating that hearsay evidence that does not fall within firmly rooted hearsay exceptions is

---

again, and this time there were some people who "said they would break in and kill me and all this kind of stuff," so she called Ben Guiffre, one of the defense investigators. While Ms. Johnson denied telling Mr. Guiffre to come pick her up if he wanted to hear the rest of the story, she did admit she had "called him several times and told him how I had pieces to the story to please come and talk to me." Ultimately, Mr. Guiffre arrived with a U-haul and moved Ms. Johnson into an apartment in Prince George's County, where Ms. Johnson stayed rent-free for a period of time. Ms. Johnson had plenty of motive to tell the defense investigators what she believed they wanted to hear, and the fact that she waited so long to tell *anyone,* and then only after repeated denials, casts serious doubt on the trustworthiness of her testimony.

*presumptively unreliable* and must be excluded absent "particularized guarantees of trustworthiness")(emphasis added)(quoting *Ohio v. Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608). As the Court of Specials Appeals properly noted, "especially in cases . . . in which there is a dispute as to whether the statement was made at all and not only whether, if made, it affords a basis for the matter asserted in it, common sense dictates that the credibility of the in-court witness to whom the out-of-court declarant ostensibly made the statement is a necessary consideration." *See Gray*, 137 Md.App. at 479, 769 A.2d at 203.[8] When a trial court considers whether the proffered statement was actually made, a court should not be forced to ignore apparent contradictions in the witness's testimony or the circumstances surrounding the witness's disclosure of the declaration, considerations which fall under the "general character of the speaker" factor in *Alvarez*. The *Alvarez* factors, favorably noted by this Court in *Matusky*, adequately outline those considerations, as required by Rule 5–804(b)(3) for hearsay statements offered to exculpate the accused, which a trial judge should, and did in this case, make in determining a declaration's trustworthiness.[9]

---

**8.** The Court of Special Appeals correctly acknowledged that with respect to considering the general character of the speaker in a court's determination of the trustworthiness of the hearsay statement, there exists a split in the federal circuits. *See Gray*, 137 Md.App. at 478–79, 769 A.2d at 202–03; *see also United States v. Seeley*, 892 F.2d 1, 3 (1st Cir.1989)(prohibiting a court's assessment of the in-court witness's credibility); *United States v. Katsougrakis*, 715 F.2d 769, 777 (2nd Cir.1983)(prohibiting a court's assessment of the in-court witness's credibility); *Alvarez*, 584 F.2d at 699–701 (permitting a trial court to assess the in-court witness's credibility as one of several factors in a trustworthiness determination); *United States v. Rasmussen*, 790 F.2d 55, 56 (8th Cir.1986)(permitting a trial court to assess the in-court witness's credibility as one of several factors in a trustworthiness determination).

**9.** The majority asserts that "[t]here is nothing in *Standifur*, or in any of our cases of which we are aware, that in a jury trial specifically permits a trial court to make a factual assessment of the trustworthiness of the in-court relator of the out-of-court declaration that exculpates a defendant." Maj. Op. at 544. I disagree; while the *Matusky* Court couldn't

Such an evaluation does not impede the jury from performing its credibility assessment once the witness takes the stand, rather it ensures that the declaration, if admitted, has been deemed sufficiently trustworthy by a trial court in exercise of the full discretion afforded it. *See United States v. Knox,* 124 F.3d 1360, 1363 (10th Cir.1997)(stating that "[a]ppellate review is particularly deferential where an evidentiary ruling concerns the admission of alleged hearsay evidence"). When the question of the "credibility" of a hearsay statement requires a hearing outside the presence of the jury and a ruling by the trial court on its admissibility, such a question may result in a two-fold "credibility" determination: as a threshold matter as to admissibility, the trial judge will rule on the *trustworthiness* of the *statement,* which may, as part and parcel of the determination, involve considerations of the general character of the speaker, and the jury will, again, weigh the *credibility* of the *testimony* of the speaker, should the statement be determined admissible. As the Court of Special Appeals correctly points out:

It often is the role of the trial court in ruling on the admissibility of evidence to make factual findings. In ruling on motions to suppress evidence, for example, the trial court takes evidence, makes factual findings, including credibility assessments, and applies the law to the findings of fact. The trial court's role as fact-finder in that context does not invade the province of the jury. Indeed, as mentioned earlier, the Supreme Court has described the inquiry that a trial court makes in deciding whether a statement qualifies as one against penal interest as "fact-intensive." *Williamson,* 512 U.S. 594, 604, 114 S.Ct. 2431, 2437, 129 L.Ed.2d 476, 486 (1994).

*Gray,* 137 Md.App. at 480, 769 A.2d at 203. The evidentiary ruling entrusted to the trial court with respect to the admissibility of a declaration against penal interest does not prohibit a jury from conducting its own credibility assessment should

adopt the *Alvarez* factors because it lacked the factual predicate for such adoption, the Court did acknowledge these factors approvingly.

the statement itself meet the requisite requirements of trustworthiness.

C. Rule 5–804(b)(3) Requires Additional Guarantees of Trustworthiness for Statements Which Exculpate the Accused

As the majority correctly acknowledges, the *Matusky* opinion notes that "when a declaration against interest of a defendant is at issue, the confrontation clause requires additional assurances of reliability before such declarations against interest should be admitted." *See* maj. op. at 538. (emphasis omitted) I do not disagree with this principle. The Confrontation Clause does, indeed, require courts to ensure the reliability and trustworthiness of statements which are inculpatory against the defendant but made by another unavailable declarant. *See Matusky,* 343 Md. at 481 n. 7, 682 A.2d at 700 n. 7. That principle, however, does not preclude, and should not preclude, our Court from holding that Rule 5–804(b)(3) itself requires additional assurances of reliability when the statement against interest *exculpates* the defendant and inculpates another—the Rule specifically provides that such a statement is *inadmissible unless* corroborating circumstances clearly indicate the trustworthiness of the statement. *See* Md. Rule 5–804(b)(3). If the intent is not vivid enough by the language of the Rule itself, I point also to the Reporter's Note to Maryland Rule 5–804(b)(3), which specifically states that, "[t]he [Evidence] Subcommittee [of the Rules Committee] notes that, under this exception, the statements that are scrutinized most closely and viewed with most suspicion are (A) statements tending to expose the declarant to criminal liability and offered to exculpate the accused; and (B) statements against the interest of both the declarant and another person and offered to prove the other person's acts." Despite the clear intention of the Rules Committee, the majority prefers to ignore part (A) of the Committee's concerns.

Certainly, as the majority notes, the *Matusky* and *Standifur* courts were concerned with the reliability of hearsay statements, or portions of hearsay statements, which *inculpat-*

*ed* the accused. This concern should not be to the exclusion of a second and equally valid concern regarding hearsay statements offered by the defense to *exculpate* the accused and inculpate another. Both concerns may co-exist. The Rule itself provides the basis for additional guarantees of trustworthiness when the statement offered exculpates the accused and inculpates another, and while the Rule is silent as to statements which inculpate the accused, other principles, such as the Confrontation Clause, provide the basis for the additional guarantees of trustworthiness for inculpating statements. *See Lilly v. Virginia*, 527 U.S. at 127, 130, 119 S.Ct. at 1895, 1897, 144 L.Ed.2d at 128, 130 (distinguishing the triad of statements against penal interest § (1) voluntary admissions offered against the declarant-defendant; (2) exculpatory evidence offered by a defendant claiming that the declarant committed the offense; and (3) evidence offered by the prosecution to establish guilt of an alleged accomplice of the declarant, and noting that unlike the first and third categories, the second category does not implicate Confrontation Clause concerns).

In summary, to conclude that excluding the alleged statement against interest was incorrect, an appellate court must hold that the findings of fact supporting the trial court's decision were clearly erroneous or that the trial judge based his decision on incorrect principles of law. In my view, neither of these circumstances exists. The trial court's factual findings appear sound and judicious, and the law upon which the court based its rulings is correct. Standards of review, which define the degree of authority shared by or granted to a judicial entity, are developed and utilized to prevent that which occurred today. The majority's conclusion that the trial court abused its discretion is unjustified—the trial court employed correct legal postulates and its factual findings cannot be said to be clearly erroneous—and results in an over-extension of appellate authority. The lack of deference to the trial court and the lack of merit in its legal arguments makes the majority appear more like a thirteenth juror than an appellate court.

## II. A Witness's Invocation of the Right to Remain Silent Before a Jury

I cannot, in good conscience, join a decision which effectively condones the use of a witness's invocation of his right to remain silent to purposely create an adverse inference of guilt against the witness in the minds of the jury. This is a matter which cannot fall, as the majority asserts, under a trial court's discretionary authority. Courts should, to every extent possible, protect the right to remain silent from adverse inferences of guilt by preventing a witness from taking the stand for the *sole purpose* of invoking his or her right to remain silent before the jury. The affirmation of this vigilance by the United States Supreme Court in *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746, (1886), is eloquent in this regard:

> It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. *It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.*

*Id.* at 635, 6 S.Ct. at 535, 29 L.Ed. at 752 (emphasis added). We are to be vigilant in our protection of the constitutional rights of *citizens*, not just of defendants; and today's majority opinion both unnecessarily and abruptly drains the constitutional right to remain silent of the important principle that adverse inferences should not be drawn from invocation of this right. The Fifth Amendment of the United States Constitution [10] and Article 24 of the Maryland Declaration of Rights [11]

---

10. The Fifth Amendment to the United States Constitution states, in relevant part, that "[n]o person ... shall be compelled in any criminal case to be a witness against himself. ..." U.S. CONST. AMEND. V.

provide a right, sacrosanct in our criminal justice system. By permitting, if not encouraging, the use of one's invocation of the right to remain silent to create an adverse inference of guilt, the majority today performs, in the Supreme Court's words, "the obnoxious ... in its mildest and least repulsive form...." *Boyd,* 116 U.S. at 635, 6 S.Ct. at 535, 29 L.Ed. at 752.

Our Court has been steadfast in protecting the invocation of the privilege against self incrimination against the presumptions that are often inherent in such invocation. *Smith v. State,* 367 Md. 348, 351, 787 A.2d 152, 153 (2001); *Woodson v. State,* 325 Md. 251, 265, 600 A.2d 420, 426 (1992); *Booth v. State,* 306 Md. 172, 226–27, 507 A.2d 1098, 1126 (1986)(Eldridge, J., concurring in part, dissenting in part), *cert. granted, in part,* 479 U.S. 882, 107 S.Ct. 269, 93 L.Ed.2d 246 (1986), *and vacated, in part,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987); *Littreal v. Redwine,* 252 Md. 662, 668, 250 A.2d 894, 897 (1969); *Veney v. State,* 251 Md. 159, 179, 246 A.2d 608, 620 (1968), *cert. denied,* 394 U.S. 948, 89 S.Ct. 1284, 22 L.Ed.2d 482 (1969). We cannot admonish courts and practitioners for purposely creating adverse inferences regarding a defendant's invocation of his right to remain silent, and yet effectively encourage those very inferences by allowing witnesses to take the stand for no other purpose but to invoke the right to remain silent in front of the jury. Nor can we expect jury members to distinguish between the (intentionally sought) adverse inferences created by a witness's invocation of the right to remain silent and the adverse inferences, which we caution against, created by a defendant's invocation of the right to remain silent.

Granted, there may be occasions where a witness, unbeknownst to the State or defense counsel, decides to invoke his right to remain silent on the stand. The procedure for handling such occurrences, however, has long been estab-

11. Article 22 of the Maryland Declaration of Rights states, "[t]hat no man ought to be compelled to give evidence against himself in a criminal case."

lished. *See Richardson, v. State,* 285 Md. 261, 265, 401 A.2d 1021, 1024 (1979)(stating that when a sworn witness invokes his right to remain silent in front of the jury, the jury should be dismissed and the trial court should "determine whether the claim of privilege is in good faith or lacks any reasonable basis")(quoting *Midgett v. State,* 223 Md. 282, 289, 164 A.2d 526, 530 (1960)). In determining whether a witness's invocation of his/her right to remain silent is justified, a court is required to question the witness outside the presence of the jury, *see Midgett,* 223 Md. at 289, 164 A.2d at 529; thereby minimizing to the extent possible, any adverse inferences that may result from the invocation. I agree with the majority's recitation of the proper procedure for determining whether a witness may invoke his right to remain silent. *See* maj. op. at 550–54.

I further agree with the majority's recitation of the proper considerations for determining whether a witness is entitled to invoke the privilege against incrimination. We have utilized, on countless occasions, the Supreme Court's decree that invocation should be protected "where the witness has reasonable cause to apprehend danger from a direct answer . . . it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman v. United States,* 341 U.S. 479, 486–87, 71 S.Ct. 814, 818, 95 L.Ed. 1118, 1124. As we articulated in *Bhagwat v. State,* 338 Md. 263, 658 A.2d 244 (1995), a witness is entitled to invoke the privilege against self-incrimination when a reasonable basis for the invocation exists and the privilege is invoked in good faith. *Id.* at 272, 658 A.2d at 248. *See also Adkins v. State,* 316 Md. 1, 6–7, 557 A.2d 203, 205–06 (1989); *Vandegrift v. State,* 237 Md. 305, 309, 206 A.2d 250, 253 (1965) (stating that "[t]he test is whether the State's Attorney calls the witness for the effect of the claim of privilege on the jury"). The majority and I agree that the trial court, in this case, conducted the proper procedure and employed the correct legal standard in determining whether Gatton had a reason-

able and good faith basis for invoking his right to remain silent.

My departure from the majority opinion stems from the majority's granting of discretionary authority to trial courts in an area where I believe none should exist.[12]  The sanctity of the right to remain silent is not dependent upon whether the party calling the witness is the defense or the State or whether the use of a witness's invocation of the right to remain silent prejudices the defendant—*i.e.,* it is acceptable to use the adverse inferences from a witness's invocation of the right to remain silent if it benefits the accused, but unacceptable if it prejudices the accused.  *See Vandegrift,* 237 Md. at 308–09, 206 A.2d at 252 (describing the requirements for prejudicial error when a State witness invokes the right to remain silent).  Not only is this anathema to our roles as guarantors of the civil liberties of our State citizenry, but there is far more at stake than the mere potential prejudice to an accused.  The integrity of the constitutional right to remain silent is undermined when trial courts are forced to condone or even encourage an adverse inference from the invocation of that right when it benefits a defendant, but are required, often simultaneously, to discourage that same adverse inference each and every other time.  We have tried valiantly throughout this Court's history to curb the adverse inferences that naturally result from one's invocation of his right to remain silent.  *See Lakeside v. Oregon,* 435 U.S. 333, 340 n. 10, 98 S.Ct. 1091, 1095 n. 10, 55 L.Ed.2d 319, 325 (1978) (explaining that "[t]he layman's natural first suggestion would probably be

12.  Accordingly, I disagree also with the Court of Special Appeals when "recognize[d] discretion in the trial court to decide the issue based on considerations of relevancy and probative value versus potential prejudicial effect" and held that "in Maryland, the question whether, upon request of a criminal defendant, a witness may be questioned in front of the jury when it is known that he will reasonably and in good faith assert the testimonial privilege must be determined by application of Md Rules 5–401 and 5–403."  *Gray,* 137 Md.App. at 517, 769 A.2d at 225.  The invocation of the right to remain silent is not an evidentiary item that can be wielded under the Rules of Evidence; rather, it is a constitutional right, the exercise of which should take on no evidentiary significance.

that the resort to privilege in each instance is a clear confession of the crime") (quoting 8 WIGMORE, EVIDENCE § 2272, p. 426 (J. McNaughton rev.1961)); *Ullmann v. United States,* 350 U.S. 422, 426, 76 S.Ct. 497, 500, 100 L.Ed. 511, 518 (1956) (acknowledging that "[t]oo many, even those who should be better advised, view this privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are either guilty of a crime or commit perjury in claiming the privilege"). In fact, it is because the exercise of the right to remain silent often carries with it overtones of adverse inferences, standard jury instructions in this State and others direct the jury not to make such inferences from the failure to testify. *See* MARYLAND CRIMINAL PATTERN JURY INSTRUCTIONS, 3:17. Yet today, the majority devalues our resolute stance on impermissible inferences on an invocation of the right to remain silent because "a defendant is entitled to have his defense fully presented to the jury." *See* maj. op. at 550.

The defendant, indeed, is entitled to present his or her defense; I disagree, however, that the petitioner's right was impeded by the court's refusal to allow Gatton to invoke his right to remain silent before the jury. In fact, I do not believe that the mere ability to present a witness for the sole purpose of invoking the privilege against self-incrimination before the jury is an essential component of any defense, which is why, in part, I do not believe that a court should have discretion in this matter. The United States Supreme Court described the right to present a defense as including:

> [t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary . . . the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019, 1023 (1967). A close analysis of some of the

facets of presenting a defense, as articulated by the Supreme Court, demonstrates that in refusing to allow a witness who invokes his right to remain silent to take the stand for the *sole purpose* of making that invocation in the presence of the jury, a court is *not* depriving a defendant of the ability to present a defense. A defendant cannot be deprived of the right to offer testimony of witnesses because a witness who properly invokes his right to remain silent will not offer testimony. Nor is the defendant deprived of the right to present his version of the facts, as the exclusion of a self-declared mute witness does not alter the other methods (witnesses, circumstantial or concrete evidence) available to the defendant in order to establish reasonable doubt in the minds of the jurors that "someone else did it." Nor is the defendant deprived of the right to present his own witnesses to establish a defense; the natural caveat to presenting *any* witness being that, to present a witness, the witness must be *available.* When a witness invokes his constitutional right to remain silent, he or she is no longer available to either the State or the defense.

The majority instructs trial courts to determine "whether sufficient evidence has been presented, believable by any trier of fact, of the possible guilt of the witness the defendant wants to cause to invoke his Fifth Amendment privilege before the jury." Maj. Op. at 558. This strikes me as self-contradicting. The majority argues that the defendant's right to present a defense could be hindered without a witness's invocation of his privilege against self-incrimination before the jury, yet requires the defendant to present "sufficient evidence" to support a reasonable belief that someone else might have committed the crime before he or she can call the "silent" witness to the stand. A defendant's ability to present a defense cannot be so impeded by the absence of the "silent" witness, or the adverse inferences therefrom, if he or she is able to procure sufficient evidence that someone else committed the crime without that "silent" witness. Stated differently, the majority believes that sufficient evidence warrants the use of a silent witness for the sole purpose of creating an adverse inference *because* a defendant's right to present a defense is otherwise

hindered. That sufficient evidence exists, in my view, however, *confirms* that permitting the purposeful generation of an adverse inference from a witness's exercise of his or her constitutional right to remain silent, based largely on notions that a defendant's right to present a defense would otherwise be impeded, is completely without merit. Before the majority would permit the otherwise impermissible (*i.e.*, the adverse inference from the exercise of one's right to remain silent), sufficient evidence is needed; yet because sufficient evidence is generated, the right to present a defense clearly could not have been hindered. The petitioner in this case would not have obtained any more "evidence" from Gatton had he been permitted to invoke his privilege before the jury, *except for an adverse inference of guilt which this Court has repeatedly warned against.*

A defendant's right to present a defense should not be upheld at the expense of diminishing the constitutional protections afforded to others. Furthermore, an adverse inference from a witness's invocation of the right to remain silent is not, and never should be "evidence" whether favorable to the prosecution or to the defendant, and thus, a defendant cannot claim an entitlement to have a witness invoke his or her right to remain silent in the presence of the jury. *See Johnson v. United States,* 318 U.S. 189, 196–97, 63 S.Ct. 549, 553, 87 L.Ed. 704, 711 (1943) (quoting *Phelin v. Kenderdine,* 20 Pa. 354, 363 (1853)) ("If the privilege claimed by the witness be allowed, the matter is at an end. The claim of privilege and its allowance is properly no part of the evidence submitted to the jury, and no inferences whatever can be legitimately drawn by them from the legal assertion by the witness of his constitutional right."); *United States v. Griffin,* 66 F.3d 68, 71 (5th Cir.1995) (stating that "[n]either side has the right to benefit from any inferences the jury may draw simply from the witness' assertion of the privilege either alone or in conjunction with questions that have been put to him") (quoting *United States v. Johnson,* 488 F.2d 1206, 1211 (1st Cir. 1973)); *Bowles v. United States,* 439 F.2d 536, 541 (D.C.Cir. 1970) (en banc), *cert. denied,* 401 U.S. 995, 91 S.Ct. 1240, 28

L.Ed.2d 533 (1971) ("[T]he jury is not entitled to draw any inferences from the decision of a witness to exercise his constitutional privilege whether those inferences be favorable to the prosecution or the defense.")

We recently explained that a court's refusal to allow a *defense witness* to testify compels consideration of the important protections afforded a criminal defendant by the Sixth and Fourteenth Amendments, namely, the guarantees of compulsory process and due process. *Redditt v. State,* 337 Md. 621, 634, 655 A.2d 390, 396 (1995). These considerations, unique to criminal defendants, are not present when a court denies the testimony of a State witness, nor for either of the parties in a civil action. *See id.* While noting that a criminal defendant's compulsory process and due process protections are not absolute, we acknowledged that "where the appropriateness of excluding an accused's witness is a relatively close call, the trial court should avoid possible infringement of the constitutional rights by permitting the offending defense witness to testify." *Id.* at 635, 655 A.2d at 397. Thus, in *Redditt,* we held that the circuit court abused its discretion in excluding a witness proffered by the defense because the witness was not properly sequestered in accordance with Rule 5–615.[13] *Id.*

That we held that a sequestration violation should not be the basis for the court's ruling to prohibit the testimony of a defense witness, a possible infringement of a defendant's constitutional right to present witnesses in his or her defense, does not mean that we must hold similarly when the basis for the court's ruling was the protection of a witness's constitutional right to remain silent. The appropriateness of the exclusion of a defense witness is not, in this case, the "relatively close call" that we deemed an exclusion based on a sequestration violation to be. If a court affirmatively rules that a witness, whether proffered by the defense or the State, has a reasonable basis for invoking his or her right to remain silent,

---

**13.** At the time of Redditt's trial, Rule 4–321, the former version of Rule 5–615, was in effect.

as articulated in *Adkins,* 316 Md. at 6–7, 557 A.2d at 205–06, and its progeny, and the court determines that the witness will elect to exercise his or her right to remain silent if he or she takes the stand, then a court has no choice but to exclude this witness.

A court is obligated, not only to ensure a fair trial for, and protect the constitutional rights of, the defendant, but to also monitor and secure the constitutional protections of all those involved in the trial process, whether a party, litigant, jury member, or witness. This is not the first time the constitutional rights of a third party could be said to have impeded an action that the defendant would have liked to have taken. We have refused to permit peremptory challenges to jurors based on race or gender because of the court's greater interest in protecting the constitutional rights of jury members to be free from discrimination by the State. *See Gilchrist v. State,* 340 Md. 606, 621–22, 667 A.2d 876, 883 (1995) (stating that "[a]lthough, in the instant criminal case, the defendant rather than the prosecution exercised peremptory strikes in a racially discriminatory manner, the Supreme Court has held that *Batson's* holding applies to peremptory challenges exercised by the defendant in a criminal proceeding") (citing *Georgia v. McCollum,* 505 U.S. 42, 50, 112 S.Ct. 2348, 2353–54, 120 L.Ed.2d 33, 45 (1992)); *see also Jones v. State,* 343 Md. 584, 593, 683 A.2d 520, 524 (1996); *Stanley v. State,* 313 Md. 50, 62–63, 542 A.2d 1267, 1273 (1988). Just as courts should not become "willing participant[s] in a scheme that could only undermine the very foundation of our system of justice ..." with respect to racial discrimination in jury selection, *see McCollum,* 505 U.S. at 49, 112 S.Ct. at 2354, 120 L.Ed.2d at 45 (quoting *State v. Alvarado,* 221 N.J.Super. 324, 534 A.2d 440, 442 (Law Div.1987)), courts should not become conduits for permitting adverse inferences to be drawn from invocation of one's constitutional right to remain silent by knowingly allowing a witness to take the stand for that sole purpose.

Notwithstanding my strict posture against the purposeful creation of adverse inferences, having a witness assert the privilege in order to demonstrate unavailability, itself, lacks

evidentiary or probative value and therefore, would fail to meet the requirements of relevancy. *See People v. Dyer,* 425 Mich. 572, 390 N.W.2d 645, 649 (1986) (stating that a witness's invocation of the right to remain silent produces no substantial evidence). It cannot, by its very nature, make a fact of consequence more or less probable because the *act* of invoking one's right to remain silent cannot be construed as an admission of guilt or involvement. The majority claims that if their stance is not followed, and a witness called by the defense is not allowed to invoke his right to remain silent in front of the jurors, then the jury may believe that the defendant (the petitioner) chose not to ask the witness (Gatton) any questions about the crime out of lack of confidence in his defense. Thus, the majority appears to be arguing that the act of invocation is relevant to explaining the reason for the witness's absence. Assuming, *arguendo,* that the witness's invocation is relevant "evidence," it should still be excluded pursuant to Maryland Rule 5–403, which permits the exclusion of relevant evidence when there exists a danger that the evidence would confuse the issues or mislead the jury. *See* Md. Rule 5–403. The majority's concern that the jury would be left wondering why the witness was not questioned is better addressed by a court's issuance, *in its discretion,* of an instruction to the jury that the witness is unavailable to either the State or the defense. I agree with the Court of Special Appeals that "[f]or the same reasons that the witness is not invoking the Fifth Amendment privilege in front of the jury, the neutralizing instruction should not inform the jury that the witness did not appear to testify because he invoked the Fifth Amendment privilege." *See Gray,* 137 Md.App. at 520, 769 A.2d at 227. Thus, a neutralizing instruction may be given to inform the jury "that for reasons developed out of their presence, the witness is not available to either side and they should draw no inference from the witness' nonappearance." *Id.* at 521, 769 A.2d at 227 (quoting John McCormick, Evidence § 121 at 297–98 (1984)).

Courts, as protectors of the constitutional guarantees afforded to all citizens, should not condone the purposeful use of

the invocation of one's right to remain silent to intentionally create the inference of guilt. Because the majority's stance would permit such use of a citizen's constitutional right, I must respectfully dissent.